## GEORGE W. MULLER MANUFACTURING COMPANY *v.* BENTON.

1. Independently of the correspondence by mail between the parties, the contract for the purchase of the goods involved in this case fell within the provisions of the statute of frauds, relative to the purchase of goods and wares amounting to $50 or more.
2. The correspondence between the parties through the mails failed to show an offer of the seller, accepted by the purchaser unequivocally, un-

'conditionally, and without variance, and that assent to the same thing in the same sense which is essential to a complete and binding contract.

3. The letters written by the plaintiff to the defendant which were excluded from the evidence contained nothing which could strengthen the incomplete contract between the parties, being in the nature of self-serving declarations made by the plaintiff to the defendant after the close of the correspondence, so far as defendant was concerned, relative to the purchase of the personal property in question; and they were properly repelled when offered in evidence.

4. The case was properly nonsuited.

JANUARY 12, 1912.

Complaint. Before Judge Lewis. Jasper superior court. August 16, 1910.

*A. S. Thurman,* for plaintiff.

*Greene F. Johnson,* for defendant.

BECK, J. George W. Muller Manufacturing Company sued L. O. Benton for $175, the price of certain second-hand bank fixtures which the plaintiff claimed were sold to the defendant for the Planters and Merchants Bank, of Warrenton, Ga. At the conclusion of the evidence introduced by the plaintiff, the defendant moved for a nonsuit, which was granted by the court on the ground that there was never a complete contract—that the minds of the parties did not meet as to the exact terms of the sale. To this ruling the plaintiff sued out a bill of exceptions.

1. Up to the interchange of the letters embraced in the correspondence between Benton and the plaintiff company, the contract for the sale of the goods in question was clearly within the statute of frauds. The subject-matter of the contract was the sale of certain goods to the amount of more than $50, and no part of the goods was delivered and received, and nothing had been given in part payment or in earnest to bind the bargain. The contract up to the time referred to rested entirely in parol, and was not binding on either of the parties, even though both understood clearly what goods were embraced in the contract and the terms relative to payment. Civil Code, § 3222 (7).

2. But we have to consider whether or not the correspondence that ensued between the alleged vendor and purchaser made a complete contract for the sale of the goods. On February 28, 1907, the plaintiff wrote to the defendant, that, having reference to the set of bank fixtures as to the purchase of which negotiations had been had, the former understood the latter to say that he was

willing to pay $175 for them as they were, adding: "If this is the case, please advise us at once and send your check for same, and we will crate the fixtures and hold them for you until you are ready to have them shipped." Prompt attention to the matter was requested. On the same date the defendant wrote to the plaintiff, the two letters crossing in the mail, as follows: "Referring to my conversation with, you relative to the second-hand fixtures, beg to advise that I accept your proposition for $175, and will send you shipping instructions in the near future." Seven days later the plaintiff wrote to the defendant as follows: "We acknowledge receipt of your letter of the 28th ult., which crossed our letter of same date to you, regarding second-hand fixtures. Please send us your check for the amount $175, and we will crate the fixtures and store them for you until you are ready to have them shipped. Or, give us authority to draw on you for that amount." There appears in the correspondence an unsigned letter in the following terms: "Dear Sir: I will remit you when I return home for the other fixtures bought of you. The Board of Directors will want to buy a directors' table for this bank; and you may send them prices and cuts of same, if you have any cuts on hand." Under date of March 28, 1907, there appears the following from defendant to plaintiff: "Please ship out at once to Warrenton, Ga., the $175.00 set of bank fixtures which I bought for that bank, and oblige." Two days later the plaintiff replied to this as follows: "We have your letter of the 28th, saying for us to ship at once the Warrenton Bank the fixtures which you bought for $175.00. If you remember correctly, you promised to send Mr. Krueger, our secretary, a check for this amount. Do so, and on receipt of same we will be pleased to crate and ship these fixtures at once." On April 1, 1907, defendant sent this inquiry to plaintiff: "In reply to your letter attached, I wish to inquire if you refuse to ship the fixtures purchased unless we pay for same in advance of shipment? This demand has never been made on me or any of our banks before by any one; and if made by you in this case, you should explain yourself." Plaintiff answered the letter of inquiry thus: "Dear Sir: We herewith acknowledge receipt of your favor of the 1st from Adrian, Ga., and in reply we wish to say that you will remember, in former letter from you, you advised us that you were going to send us

your check some time ago, for the $175.00. But we have not received same, and we ask that you let same come forward. You know exactly what you bought and the condition of the fixtures, and we would like to deal with you direct in this matter. We will crate the fixtures and ship to the Warrenton Bank as directed; we do not know but that these people, after receiving their fixtures, will have all kinds of complaints regarding these fixtures and may not want to pay purchase-price, giving all kinds of excuses. For that reason, we shall ask you to send us your check direct and have the Warrenton Bank to make settlement with you for the fixtures." Then follows a letter from J. C. Evans, cashier of the bank at Warrenton, to the plaintiff, under date of April 9th, and the answer of the plaintiff company to Evans, in the following words:

"Warrenton, Ga., 4/9/1907.

"Mess. Geo. W. 'Muller Co., Atlanta, Ga.

"Dear Sirs: Mr. Benton advises me that he has bought the fixtures for Planters & Merchants Bank, Warrenton, Ga., from you. We are now ready for same. Can you give us any promise as to when we may expect them?

"Yours truly, J. C. Evans, Cashier."

"Mr. J. C. Evans, Cashier,    April 11th, 1907.

"Planters & Merchants Bank, Warrenton, Ga.

"Dear Sir: Replying to yours of the 9th in reference to the second-handed fixtures bought by your Mr. L. O. Benton, we wish to say we will make shipment of same not later than day after to-morrow. Trusting this will be satisfactory, we are

"Yours very truly, G. W. Muller Mfg. Co."

On the day following the last letter the plaintiff wrote the defendant as follows: "Enclosed we hand you B/Lading of shipment of fixtures bought for the Planters & Merchants Bank, Warrenton, Ga. Please send us N. Y. Exchange of purchase-price, $175.00." And under date of April 15th plaintiff wrote the defendant, that, having had a letter from the bank instructing it to ship the fixtures at once, they had been shipped as per instructions and invoice and bill of lading sent to defendant, for which it requested a check from the defendant. Thereupon, under date of April 19th, the defendant wrote, saying: "I am some-

what surprised at your favor of the 12th inst., enclosing B/L for fixtures shipped to Planters & Merchants Bank at Warrenton, Ga. I have your letter in which you absolutely refused to ship them until you first had in hand my check to cover them; and upon receipt of this letter, we began to figure on other fixtures. Mr. Evans of Warrenton left early this week for Talladega, Ala., to see the set down there, and will return by Columbus, Ga. I have not heard from him yet as to what he did. · He will in all probability buy either the Talladega set or at Columbus. In the meantime, however, I will endeavor to place the set shipped Warrenton elsewhere."

Plaintiff then tendered in evidence certain letters written by plaintiff to the defendant after the shipment of the goods to the bank at Warrenton, requesting payment for the goods, calling attention to their former correspondence, requesting remittance in payment of the purchase-price, asking for explanation as to why the defendant did not honor certain drafts, and stating that "legal steps" would be taken unless payment were made; also a letter from the plaintiff to the agent of the Georgia Railroad, acknowledging receipt of a notice of a return shipment of sixteen pieces of old bank fixtures from Warrenton, Ga., by the Merchants & Planters Bank, and giving notice that the plaintiff company refused to accept this shipment.

The court refused to admit in evidence the letters by the plaintiff company to the defendant subsequently to the date on which the shipment of the bank fixtures was made to Warrenton, except the letters of April 12th and 15th, as hereinabove set forth; and this ruling is assigned as error. We think, however, that these letters were properly excluded. As between the plaintiff and the defendant, the rights of the parties (that is, of the plaintiff to demand payment and the liability of the defendant to make payment) were to be considered and determined in the light of the facts and circumstances as they existed at the time of the shipment of the bank fixtures to Warrenton, Ga., upon receipt by the plaintiff of the letter from Evans, cashier, hereinabove set out. Mere statements in letters of the plaintiff's understanding of the contract and demands by it on the defendant, and threats of legal procedure, though made to the defendant himself, could not create any liability on the part of the defendant, in the absence of

anything to show that the defendant made any further statements or agreement upon his part. We must look to the correspondence and decide from the contents of the various letters whether there was a contract for the sale and purchase of the goods between the parties to this case. A careful reading of these letters will show that there was not such a meeting of minds as to the terms of the sale and payment for the goods as would constitute a complete contract. It will be observed that the plaintiff insisted in the various letters to Benton that he should send his check in payment for the goods, and that the plaintiff would then crate and set aside the goods subject to his order. If these demands for a check as the condition precedent to the setting aside of the goods subject to Benton's order mean anything, they indicate that the plaintiff continued to insist that payment in advance was a condition precedent to the completion of the sale. While a contract can be made by correspondence through mail as well as when the parties are together, the same rules applying in either case, in order to make a binding contract the offer of the seller must be accepted by the purchaser unequivocally, unconditionally, and without variance of any sort. There must be a mutual assent of the parties thereto, and they must assent to the same thing in the same sense. An absolute acceptance of a proposal, coupled with a condition, will not be a complete contract. *Robinson* v. *Weller,* 81 *Ga.* 704; 9 Cyc. 267. In the case just cited, it was held, that when a party living in Chattanooga, Tennessee, proposed to sell a certain lot of land which she owned in Rome, Ga., and the owner of the land wrote to the party in Rome that she would accept a certain amount for the property in question, one third cash and the balance on time, " her offer meant that she would accept the cash and make deed to the purchaser in Chattanooga; and when such other party wrote accepting her offer, and saying that the money was ready at Rome, and directing her to send the deeds to Rome, it was not a full acceptance of the offer she had made, and therefore was not a complete contract." We have no hesitancy in holding in the present case, that, certainly up to the date of the shipment of the goods on the order of Evans, cashier, to Warrenton, there was no complete contract for their sale and purchase between the plaintiff and defendant. And we are equally clear that the act of shipping to the bank at Warrenton, upon the order of another agent of the

bank than Benton, would not give binding effect to the inchoate contract between Benton and the plaintiff, so as to render Benton liable. When the correspondence between Benton, whom the plaintiff is seeking to make liable as an individual, terminated, the plaintiff company was, as we have seen above, still insisting on a check being sent to it in advance of a delivery of the goods, and Benton was refusing to send the check in advance and asking that it explain such demand. Benton stopped there in his negotiations for the purchase of the property. Pay in advance he would not; and his last advice from the plaintiff, until he was informed that upon the order of another the goods had been shipped, was that the plaintiff would go no further. Under these circumstances, we do not think that he became at any time individually liable for the purchase-price of the goods in question, and the court below did not err in so deciding.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*