In re ATKINSON–KERCE GROCERY CO.

(District Court, N. D. Georgia. July 28, 1917.)

No. 885.

1. BANKRUPTCY ⬦226—CLAIMS—PRIORITIES—EVIDENCE.
Evidence *held* sufficient to support referee's findings as to priority between claims against bankrupt's estate.

2. BANKRUPTCY ⬦226—FINDING OF REFEREE—PRIORITIES—REVIEW.
The report of a referee in bankruptcy proceedings, determining the priorities between claimants, must be given weight, where supported by sufficient evidence.

In Bankruptcy. In the matter of the Atkinson-Kerce Grocery Company. Intervention of Wiley H. Trammell. On petition to review an order of the referee. Report confirmed.

Lipscomb & Willingham, of Rome, Ga., for trustee.
Eubanks & Mebane, of Rome, Ga., for intervener Trammell.
Barry Wright, of Rome, Ga., for intervener Selman.

NEWMAN, District Judge. This is a petition to review and revise the action of the referee in the bankruptcy proceeding. It is a

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contest, as the referee states, between D. B. F. Selman and Wiley H. Trammell, who is attempting to set up a contractor's and material-man's lien on certain property of the bankrupt. The facts of the case and their legal status appear in the opinion of the referee as follows:

The trustee in bankruptcy in this case filed a petition for the sale of the real estate belonging to the bankrupt estate, freed from the liens; the liens attach to the money derived from the sale, in the same manner that they did to the property. The trustee's petition also asks that the priority of the several liens be fixed and determined. An order was passed by the referee on the 12th day of April, 1917, for the sale of the real estate in the manner requested by the trustee. In the meantime, all of the lienholders intervened and asked that their liens be set up and allowed.

There is a contest between D. B. F. Selman, who holds a claim for purchase money, and Wiley H. Trammell, who is attempting to set up a contractor's and materialman's lien for something over $1,200. This property was orig-inally owned by Henry Powers, who borrowed $1,500 from Felix Corput, giv-ing him a security deed to the property, to secure the loan, and vesting the legal title in said Corput. Powers then sold the equity in the property to D. B. F. Selman, who in turn sold it to W. C. Atkinson and W. T. Kerce, owners of the stock of the Atkinson-Kerce Grocery Company, who in turn transferred their interest to the Atkinson-Kerce Grocery Company. When Selman bought from Powers, he took a deed to his interest in the property; and when he sold to Atkinson and Kerce, he gave them a bond for title. The considera-tion in the sale from Selman to Atkinson is $4,000, and Selman, when he bought the property from Powers, having agreed to assume the Corput loan of $1,500, the amount due him is reduced to $2,500, and for this amount he claims that his lien should be fixed as second to the Corput lien.

After Selman sold to Atkinson and Kerce, and after the transfer to the At-kinson-Kerce Grocery Company it was decided to tear down the wooden building on the lot and build a brick building in place of it. Wiley H. Tram-mell was employed and contracted with to do this work. Trammell claims that during the progress of the work Selman claimed that he owned the prop-erty, consulted with him as to the front of the building, and agreed that, if the Atkinson-Kerce Grocery Company failed to pay for the work, he would. This claim Selman denies. The work on the building was finished in Decem-ber, 1916, and on the 1st day of January, 1917, Trammell filed a lien in the office of the clerk of the superior court of Floyd county on this property, against D. B. F. Selman as owner, for $1,219.

The Atkinson-Kerce Grocery Company was adjudicated a bankrupt on the 16th day of December, 1916. Both Selman and Trammell then come into the bankruptcy court and seek to set up their liens, each claiming priority over the other. On October 12, 1916, Trammell took a note for $1,279.48, in full payment of his debt, which was signed by W. T. Kerce. This note was introduced in evidence. Trammell's intervention seeks to set up a lien against D. B. F. Selman, who, he alleges, was at the time the work was done, and is now, the holder of the legal title to said property. During the course of the proceed-ings the trustee paid off the Corput lien, out of the funds of the estate, and had all of Corput's rights transferred to him. This places in the trustee the legal title derived from Corput, and the equitable title derived from the At-kinson-Kerce Grocery Company; Selman still retaining his claim for $2,500, the balance of the purchase money.

Counsel for the trustee filed an objection to Trammell's lien, asking that it be disallowed, because, in the first place, it does not set out against whom said lien was filed, and because his information is that the lien was filed against D. B. F. Selman, who is not a party to the bankruptcy proceeding, and because it should have been filed against the Atkinson-Kerce Gro-cery Company. In the opinion of the referee, the lien should have been filed against the holder of the legal and equitable title, and, both of these titles now vesting in the trustee, the lien should have been filed against the trustee; the trustee holding the legal title of Corput and the equitable title

of the Atkinson-Kerce Grocery Company. In support of this proposition, the referee cites Williams v. Chatham Real Estate & Improvement Co., 13 Ga. App. 46, 78 S. E. 871. I quote as follows: "Before the lien on the land could be established under the allegations of the petition, both the holder of the legal title, to wit, the Chatham Real Estate & Improvement Company, and the holders of the equitable reversionary title, to wit, the trustees, for the use of the church, would have to be joined in the suit. The legal title being in the realty company, and the equitable title in the trustees for the church, and the church itself having been built for the use of the Colored Methodist Episcopal Church, under the allegations of the petition there was a privity of interest between all the parties. Certainly the realty company was a necessary party, and its title could not have been incumbered in the suit without first having made it a party. The owner of the property, or of the interest sought to be charged, is a necessary party, without whose presence a valid judgment, foreclosing the lien, cannot be rendered." In this case, Corput takes the place of the realty company, and the Atkinson-Kerce Grocery Company is the holder of the equitable title.

In Reppard, Snedeker & Co. v. Morrison, 120 Ga. 28, 47 S. E. 554, the headnote says: "The title of the true owner of the land cannot be subjected to a lien for material, unless he expressly or impliedly consents to the contract under which the improvements are made. Where the owner did not consent to the alteration or improvement of the building, the land could not be subjected to a lien for material furnished under a contract made by the tenant with the contractor." In this case it is perfectly apparent that Corput is the true owner of the land, and that the equitable interest is vested in the Atkinson-Kerce Grocery Company.

In Carr & Co. v. Witt, 137 Ga. 374, 73 S. E. 669, section 2a of the headnote says: "A contractor furnishing material and making improvements under a contract with a tenant, upon the land occupied by the tenant, does not thereby acquire a lien as against the owner of the land, although the owner, with knowledge of the contract between the tenant and the contractor, consented for the improvements to be made." Paragraph "b" of the same section says: "The allegation that Carl Witt 'ratified and assented to the contract' means nothing more than that Carl Witt gave his consent that the improvements should be made under the contract between the tenant and the contractor, and does not mean that he adopted the contract as one made for him by the tenant acting as his agent, so as to bring him into contractual relations with the contractor making the improvements and furnishing the material." This case is a very similar one to this, and sustains the contention of counsel for Selman.

Jennings, Gresham & Co. v. Huggins, 125 Ga. 338, 54 S. E. 169, says: "On the trial of an action against a debtor, to enforce a materialman's lien for material sold to and used by him in the improvement of certain real estate, of which he was in possession as the ostensible owner, the record of a claim of lien asserted by the plaintiff against the defendant's wife, as the owner of the property for material furnished to improve the same, is inadmissible in evidence, because of the obvious variance between the pleading and the proof offered to sustain it. Such an action cannot be converted into one against the wife by an amendment alleging that her husband acted as her agent in purchasing materials and using them in making improvements upon real estate belonging to her. The grant of a nonsuit was proper." (The above is a headnote.) It does not appear anywhere that Selman is the owner of the legal title to this property. It is admitted that Felix Corput held the legal title which is now vested in the trustee. The Atkinson-Kerce Grocery Company had bought the equitable title from Selman, were then in possession of the property, and made the contract with Trammell. I do not see, under the circumstances, that Trammell has any right to enforce his lien against Selman, who was not in possession of the property, and did not own the legal title, and had a mere claim of lien for purchase money due.

It is therefore ordered: First. That the lien of Wiley H. Trammell, as a contractor and materialman, be disallowed. Second. It is ordered that the

lien of D. B. F. Selman for, $2,500, balance of purchase money, be fixed as standing second in dignity to that of Felix Corput for $1,500.

[1, 2] After considering the recent report of the referee, filed July 23d, in connection with his former report (above set forth) and the record in the case, I must agree with the referee about the conclusion he has reached. I think it is clear from this record that Selman's lien for the purchase money is sufficiently supported by the evidence and by the facts to make the report of the referee correct. At all events, the facts are not sufficient to justify me in differing with the referee under the well-recognized rule on that subject. He saw the witnesses and heard the case on the ground where the transactions occurred, and I must give that weight to his finding which is usually given.

The report of the referee is confirmed, and the priority of the Selman lien over that of Trammell, and the Selman lien being subject to the priority of the Corput lien, is hereby determined; and it is so ordered and decreed.