VAN KEUREN v. BOOMER & BOSCHERT PRESS CO.

(Supreme Court, Appellate Division, Third Department.    March 8, 1911.)

1. SALES (§ 23*)—CONTRACT.

    An order, filled in on a blank form, and signed by plaintiff, authorizing and requesting defendant to ship him a cider press, and agreeing to pay a certain sum when the press was set up, etc., did not constitute a contract; there being no acceptance by defendant, and the printed words, "Sold by," in a corner of the paper, followed by the written name "S.," simply designating the name of the salesman negotiating the order.

    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 44–48; Dec. Dig. § 23.*]

2. SALES (§ 23*)—ORDER—ACCEPTANCE.

    Where plaintiff sent defendant a written order for a machine, that the latter wrote in reply, "Your order received and will have our best attention," did not constitute an acceptance of the order.

    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 44–48; Dec. Dig. § 23.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Ulster County.

Action by William W. Van Keuren against the Boomer & Boschert Press Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Upon August 24, 1905, plaintiff requested defendant to send one of its agents to give him a price on its cider press, and also information as to the press. In that communication he stated that he would like it by the 15th of September. On August 28th one George H. Schlegel went to the plaintiff at Kingston, and presented to the plaintiff a card, which contained the defendant's address at Syracuse, and upon the bottom of the card was printed, "Represented by George H. Schlegel, Salesman." At that time negotiations were had between plaintiff and said Schlegel, which resulted in a paper, of which the following is a copy. This paper was upon a blank form, and the words written in are underscored; the words not underscored being printed on the paper as part of the form:

"Dated at *Kingston*

"*$484.79–100.*                                    this *28* day of *August*, 1905.

"Boomer & Boschert Press Co.,

"Syracuse, N. Y.

"Through *Geo. H. Schlegel*, your salesman, *Reading, Pa.*, you are hereby authorized and requested to ship to *me* at *Kingston* Station, county of *Ulster*, state of *N. York*, soon as possible, the . . . . . . day of *Sept.* 1905: *1 No. 1–4 screw press, steel beam; 1 reversible platform; 18 racks and form; 16 cloth, medium; 1 elevator; 1 large grater with fast and loose pulley; supporting frame and canvas chute; (1 bbl. gage free)*, which *I* agree to promptly receive and pay the freight. *I* also agree to pay *four hundred and eighty-four* $^{79}/_{100}$ dollars for said goods, as follows: *To be paid cash soon as press set up, and run and making cider*, payable at *Kingston National Bank.*

"And it is agreed by the undersigned that the title to said property shall remain in you until it is fully paid for, and in default of the payments as agreed, or of any other condition of this agreement to be performed, you or your agent may, with or without process of law, take possession of and remove said property and collect reasonable charges for damages and expenses.

"Sold by *Geo. H. Schlegel.*                    Name, *W. W. Van Keuren,*

"P. O. Address, *Kingston, N. Y.*"

Upon August 30th defendant sent to the plaintiff a postal card, a copy of which is here inserted; the words underscored being written in, and the remaining words printed thereupon:

"Boomer & Boschert Press Co.,

"Syracuse, N. Y., *Aug. 30*, 1905.

"Dear Sir: Your order of *Aug. 29*, for *press*, etc., received through Mr. *Wm. A. Lawrence*, and will have our best attention.

"Thanking you, we are

"Very truly yours,                    Boomer & Boschert Press Co."

Thereafter defendant refused to furnish the press, except upon an advanced payment, and upon other terms than those specified in the paper signed by the plaintiff, with which conditions the plaintiff refused to comply. This action is brought to recover damages claimed to have been suffered by the plaintiff by reason of the defendant's refusal to deliver the press in accordance with the paper signed by plaintiff, and claimed by the plaintiff to constitute a contract between the parties. The Trial Term submitted to the jury the question as to whether the papers constituted a contract for the plaintiff. Verdict for $250 damages. From the judgment entered upon this verdict, and from an order denying defendant's motion for a new trial, the defendant here appeals.

Argued before SMITH, P. J., and KELLOGG, SEWELL, and HOUGHTON, JJ.

Edwin Nottingham, for appellant.
William D. Brinnier, for respondent.

SMITH, P. J. I am unable to find any legal contract by the defendant to deliver to the plaintiff the cider press under the terms stated in the paper of the 28th of August. It seems to me clear that that paper was simply an order for the press, subject to acceptance by the defendant at Syracuse, and does not purport to be a contract by which the defendant agreed to deliver the press upon the terms therein written. The paper is addressed to the defendant at Syracuse. It "authorizes and requests" the defendant to ship to the plaintiff this cider press upon the terms named. So far the paper does not purport to state any contract, but is an unequivocal order, which is subject to acceptance thereafter by the defendant. Defendant claims, however, that the whole purport of the paper · is changed from an order into a contract by the words in the lower left-hand corner, "Sold by Geo. H. Schlegel." The words "Sold by" as there used are part of the printed form. It is inconceivable that the defendant intended by this single line to change the whole legal import of the paper from what without it would be a distinctive order into a binding contract. It seems to me the undoubted significance of that phrase is simply to designate the salesman who negotiated the order for the defendant's purposes only. The paper does not purport to be signed by the defendant, nor by any one in their behalf, and whatever significance would otherwise be attached to the words "Sold by," as there used, is completely controlled by the rest of the paper, which constitutes simply an order, without any binding obligation on the defendant's behalf.

And this construction accords with commercial usage. Ordinary salesmen are not usually given authority to make binding contracts. The contract in question illustrates the danger of such authority. The cider press was not to be paid for until the press was set up and making cider. If an ordinary salesman were allowed to make a binding contract of such a nature with a plaintiff of doubtful responsibility, no manufacturing corporation could long survive such a practice.

Plaintiff further contends that, even if the paper of August 28th did not constitute a contract, the defendant's reply of August 30th constitutes an acceptance of the order. In the postal card of August 30th the defendant notified the plaintiff that the order was received "and will have our best attention." It would hardly seem to need authority for the proposition that this communication did not constitute an acceptance of the order. The acceptance of an order requires consideration, not only of the terms of the order, but of the responsibility of the party to whom credit is given. The only obligation expressed in that communication was the obligation to give prompt consideration, for the purpose of ultimately determining whether or not the order should be accepted. A precisely parallel question arose in the case of Manier v. Appling, 112 Ala. 663, 20 South 978. In that

case the defendants had received an order, to which it was responded: "The same shall have prompt attention." It was there held that this response could in no sense be deemed an acceptance of the order, and the conclusion is there sustained with convincing reasoning.

If these conclusions be correct, it is unnecessary to consider the claimed error on the part of the trial court in refusing to allow evidence to show that the agent, Schlegel, had no authority to make a binding contract, or the claim of the plaintiff that the form of the card which the agent presented was a representation by the company that he had such authority. Nor is it necessary to consider whether the damages proved were properly allowed by the trial court over the objection of the defendant that they had not been pleaded. Those questions are immaterial, if, as we view it, the defendant has never obligated itself to furnish the cider press to the plaintiff under any conditions. The judgment and order must therefore be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.