8825. EVANS *v.* ATLANTA PAPER COMPANY.

1. The letters written by the defendant company and its agent to the plaintiff did not constitute an absolute, unconditional, and unequivocal acceptance of his offer to buy from defendant certain goods of the agreed value, more than $50; and accordingly there was no valid and enforceable contract between the parties.

2. Although a person to whom an order for goods is sent may, by his conduct, lull the proposed buyer into the belief that the order will be filled, and thereby estop himself from denying the existence of a valid and binding contract, the facts alleged in the petition in the present case are not sufficient to show such conduct on the part of the defendant.

3. Since the writings set out in the petition did not make a complete contract between the parties, and the agreed price of the goods under the alleged contract being over $50, the trial judge properly sustained a demurrer to the petition, based upon the ground that the contract was within the provisions of the statute of frauds, and was therefore unenforceable.

DECIDED OCTOBER 31, 1917.

Action for breach of contract; from city court of Atlanta— Judge Reid. April 14, 1917.

A. J. Evans brought suit against the Atlanta Paper Company, alleging that the defendant had made with him a contract to furnish him 100,000 corrugated shipping-cases; and that the contract was represented by an order from plaintiff to defendant, dated Feb. 4, 1916, and by acceptance of said order by the defendant, which acceptance was evidenced by two letters, the first of which was written to Evans on Feb. 9, 1916, by Rosenberg, the agent of defendant, and the second was written by defendant to Evans on Feb. 28, 1916. This order and the two letters are here set out in full:

"Atlanta Paper Co., Atlanta, Ga. Date 2/4, 1916.

"Order No.————Ship to A. J. Evans, at Fort Valley, Ga.

"How ship————When: July 30. Terms, 5% off 30 days. Salesman Rosenberg.

"15 M No. 2 Corrugated ............................$52.45
"50 M No. 2½, Shipping ........................... 68.50
"35 M No. 3 Cases ................................ 76.50

"Less freight. Print on two ends.

"This order given subject to crop conditions and decline in price.

"Atlanta Paper Co., Atlanta, Ga., 2/9/16.

"Mr. A. J. Evans, Fort Valley, Ga.

"Dear Mr. Evans: I am writing to you, as per my promise, that it will be perfectly satisfactory to have the Southern Brokerage Co. handle our account on peach cases and peach pads for this season, and I sincerely hope that with your co-operation it will mean a big business for me. I have instructed the house to run up for you about 5 M 2's, 15 M 2½, and 10 M 3's. I am doing this so that I will have them ready when the peach season opens up, and so that there will be no delay in making you this first shipment. I would like very much for you to write me just about when you think you will want this first shipment, so that we can make our arrangements accordingly. Since I last saw you the raw material out of which these corrugated boxes are made has advanced about twenty-five per cent., and naturally we want to protect ourselves as much as possible. For that reason I would appreciate very much if you would give me an idea, as soon as you can, of how many boxes you will need this season, and I will then cover for that amount. I would also like for you to try and find out how many Mr. Roberts will use this year, as we want to take care of that business also, and want to protect ourselves accordingly. I know that you will understand just exactly what information I am after; and with kindest regards and best wishes for a big crop this year, I remain,

"Yours very truly, L. J. Rosenberg."

"Atlanta Paper Co., Atlanta, Ga., 2/28/16.

"Mr. A. J. Evans, Fort Valley, Ga.

"Dear Sir: We take the liberty of writing you with reference to the order which you kindly placed with our Mr. Rosenberg for boxes. The conditions that confront us to-day with reference to board are serious, and in order to protect ourselves it is necessary that we send in specifications to the mill and bring the paper to Atlanta. We would therefore appreciate your kindly looking into this matter thoroughly, advising us what quantities you would want to take out on your first shipment, so that we can have the board made up. . We feel sure that you will understand our position in the matter, and remain,

"Yours very truly, Atlanta Paper Co., Moss, Treas."

The petition further alleged that before the time for performance the defendant repudiated its contract and refused to perform it, and that by virtue of such breach the plaintiff was obliged to pay for said corrugated shipping-cases the sum of $9250, the market price of them at the time of the breach, and that said sum was $2360.75 in excess of the price contracted to be paid defendant, this excess sum being the amount of damage sustained by the plaintiff, for which he prayed judgment.

To this petition the defendant demurred generally, and specially upon several grounds. The principal ground was that "there is in the petition set up no binding contract in writing, upon which a recovery can be had against this defendant. The offer of the plaintiff, while signed by him, is not, as demanded by the statute of frauds, accepted by this defendant, and as a result thereof there is set up in the petition no contract in writing by which this defendant is bound and under which the plaintiff can recover." The plaintiff amended his petition to meet the grounds of special demurrer, and added the allegations, that the defendant, by writing the letters hereinbefore quoted, lulled the plaintiff into the belief that it would fill the order in accordance with the terms of their contract, and that the plaintiff relied on the contract and allowed the material embodied in the order to advance in price before the contract was breached, and thus suffered damage; and "that defendant and plaintiff treated the contract as a valid, binding contract." To the petition as amended the defendant demurred upon the ground that the allegation that the defendant "by said letters lulled the plaintiff into the belief that it would fill the order" was a conclusion not justified by the letters themselves; that writings which simply "lulled" the plaintiff into a belief that the order would be filled were not a compliance with the statute of frauds; and that the allegation that plaintiff and defendant treated the contract as valid and binding was a conclusion of the pleader and too general in its statement.

The trial judge sustained the general demurrer to the petition as finally amended, and the plaintiff excepted.

*Dodd & Dodd,* for plaintiff.

*Rosser, Slaton, Phillips & Hopkins,* for defendant.

HARWELL, J. The controlling questions in this case are, (1) whether the writings attached to the petition as exhibits, consist-

ing. of plaintiff's offer and the two letters written him by the defendant and its agent, sufficiently evidenced in writing a complete contract between the parties; and (2) whether the letters written by defendant to plaintiff were sufficient to lull the latter into the belief that the defendant would fill the order, and thereby estop the defendant from denying that such a contract existed.

1. While a contract can be made by correspondence through mail as well as when the parties are together, the same rules applying in either case, in order to make a binding contract the offer of the seller must be accepted by the purchaser unequivocally, unconditionally, and without variance of any sort. *George W. Muller Mfg. Co.* v. *Benton,* 137 *Ga.* 411, 416 (73 S. E. 669). Unless the offer of the plaintiff in this case to buy from the defendant the specified number of shipping-cases at the time specified was so accepted by the defendant in writing, there would be no enforceable contract, since the order was for goods amounting to more than $50 in value, and the contract of sale therefore within the purview of the statute of frauds. Civil Code, § 3222 (7). The only writings relied upon to show such an acceptance are the two letters set out in the petition. Can these letters be said to constitute an absolute, unequivocal, and unconditional acceptance by the defendant of the plaintiff's order? We do not think they can be so considered. It is true that the letter from the defendant company of Feb. 28, 1916, acknowledged receipt of the order obtained through its agent, Rosenberg. While there is some conflict in the decisions of the courts on this question, the weight of authority is to the effect that the mere acknowledgment of the receipt of an order, even though coupled with the assurance that the same should receive prompt attention, is not sufficient to show acceptance of the offer. The reason for this ruling is ably given in the case of Manier v. Appling, 112 Ala. 663 (20 So. 978), where the Supreme Court of Alabama held that "acceptance by a wholesale merchant of an order for the purchase of goods is not shown by evidence that the merchant wrote to the buyer, acknowledging receipt of the order, and stating that it should have prompt attention." To the same effect see also Courtney Shoe Co. v. Curd, 142 Ky. 219 (134 S. W. 146, 38 L. R. A. (N. S.) 903); Van Keuren v. Boomer, 143 App. Div. 785 (128 N. Y. Supp. 306); National Cash Register Co. v. McCann, 80 Misc. 165 (140 N. Y.

Supp. 916). In Cheboygan Paper Co. *v.* Swigart Paper Co., 140 Ill. App. 314, it was held that an acknowledgment of the receipt of an order, saying that the same had gone forward to the mill for their attention, and would be filled as quickly as the orders now placed with the mill were out of the way, was not such an unconditional acceptance as to constitute a completed contract. We do not think that a fair construction of the letter written by the Atlanta Paper Co. to Evans on Feb. 28, 1916, would authorize the conclusion that the same was an unconditional acceptance of his offer. The letter asks the plaintiff to kindly look into the matter thoroughly, "advising us what quantities you *would* want to take out on your *first shipment,* so that we can have the board made up." This letter sought information from the plaintiff as to the quantity he would desire on the "first shipment." The order specified unconditionally that the goods were to be shipped on July 30th, and makes no mention of different shipments at different times. We think, for this additional reason, the acceptance of the offer was not such an absolute, complete, and unconditional acceptance as to effect a definite contract between the parties. See *Decker* v. *Gwinn,* 95 *Ga.* 518 (20 S. E. 240) ; *George W. Muller Mfg. Co.* v. *Benton,* supra; *Dukes* v. *Gore,* 11 *Ga. App.* 744 (76 S. E. 365). Whether or not the defendant's agent had the power to bind the company by an acceptance, it is true that the order was not signed by the agent of the company, and until unconditionally accepted by the company no contract existed. See *Cable Co.* v. *Hancock,* 2 *Ga. App.* 73 (58 S. E. 319).

2. We concede that, under the ruling in *Pitcher* v. *Lowe,* 95 *Ga.* 423 (22 S. E. 678), the seller may by his conduct lead the buyer to believe that his offer has been accepted and to act upon that belief, and by such conduct estop himself from afterwards denying the existence of a valid, binding and enforceable contract. In that case it was held: "An agent, in behalf of his principal, having sold goods to another at a specified price, the sale being conditioned upon the principal having the goods in stock when the order reached him (the goods, in case the order was accepted, to be shipped when requested by the buyer), and the principal, upon receiving the order which was signed by the agent, having sent a letter to the buyer acknowledging its receipt, and, without stating that the goods were not in stock, asking for references as

to the buyer's financial standing, which the latter, in a letter recognizing the validity of the order, gave; and thereafter the principal, by his conduct, having allowed the buyer to believe that his financial references were satisfactory and that the order was duly accepted, and to act upon that belief, the buyer had the right to treat the contract of sale as complete, to insist upon its fulfillment, and to recover damages for a breach of the same, although in point of fact the goods in question were not in stock at the time the order was received as above stated." The facts alleged in the petition in the instant case, however, do not bring this case under the ruling announced in the case just cited, and do not authorize this court to hold that this defendant's conduct was sufficient to lull the plaintiff into the belief that his order was accepted and would be filled. The plaintiff did not complete the contract by giving to the defendant the information requested by it in its letter of Feb. 28, 1916, and the minds of the contracting parties had never met as to the time of delivery of the cases or the quantities of the respective deliveries.

Since the judgment of the trial judge in sustaining the demurrer is affirmed on the ground that no complete written contract existed between the parties such as would take it without the provisions of the statutes of frauds, it is not necessary to decide whether the clause "this order is given subject to crop conditions and decline in price," embodied in the order, rendered the contract so indefinite as to make it incapable of enforcement, as is contended in the demurrer.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*