30639. ARMOR INSULATING CO. *v.* NATIONAL GYPSUM COMPANY.

DECIDED OCTOBER 27, 1944.

*Moise, Post & Gardner,* for plaintiff in error.

*Gambrell & White, James S. Wilson Jr.,* contra.

SUTTON, P. J. (After stating the foregoing facts.) The question for determination is whether or not there was sufficient evidence to authorize a finding that the plaintiff had accepted the defendant's order of November 7, 1940, for the material involved. If there was, the court erred in directing a verdict for the plaintiff and in overruling the defendant's motion for a new trial; but if no binding contract in this respect was established, then the court properly directed the verdict for the plaintiff.

It was stipulated by counsel that the parties signing all letters and other correspondence introduced in evidence had authority to commit their respective companies with regard to the contents thereof, except D. N. Scott, who in behalf of the plaintiff wrote the letter of March 12th, and that all of such letters, telegrams, or correspondence were sent to and received by the parties to whom addressed.

The plaintiff in error in its brief contends that the order placed by it with National Gypsum Company on November 7, 1940, for 10,320 square feet of travacoustic tile, and certain letters and testimony with respect to that order, constituted a contract between the parties for the material in question. The plaintiff in error relies on the letter of November 12, 1940, written by D. N. Scott of the general sales department of National Gypsum Company which states: "This order is under consideration in our office at

the present time, and we believe the best procedure will be to enter it with the Portsmouth plant so that they can begin to make definite arrangements for fabrication. . . The last paragraph of your kind letter is being checked with our production department in an effort to determine what program can be worked out on an order of this kind. We appreciate your position and we believe that we can work out a satisfactory arrangement with our mill whereby additional stock of this material will be available in case you have need for it;" and on the letter of November 25, 1940, written by Paul Duffner of the acoustical sales department of Armor Insulating Company to Lt. J. A. Bentley of the U. S. Naval Air Station, Jacksonville, Florida, as follows· "We have received a form letter from you reading as follows: 'Four copies of manufacturers' certificates stating that the materials covered by Armor Insulating Company's order No. 011003, dated 11-7-40, comply with the contract requirements will be accepted in lieu of inspection at the point of manufacture, subject to final inspection at the site; shipment of the materials will be at the contractor's risk.' We have already furnished several copies of the enclosed certificates to Armor Insulating Company. If this certificate is satisfactory, you can obtain the necessary copies of it from Armor Insulating Company, or, if you so desire, we will be glad to send you the four copies, properly notarized and signed, upon request. However, if you desire some other kind of certificates, it will be necessary for us to have a complete copy of the 'contract requirements' mentioned in your original note to us on this subject. We are awaiting further advice before taking final action on this matter;" and on Armor Insulating Company's letter of January 2, 1941, to Artley Company of Jacksonville, Florida, which states: "With reference to the acoustical materials for the mess hall, bakery, naval air station, Yukon, Florida, we are wondering if it would be wise to make an early shipment; we bring this up because there have been some unfortunate delays in deliveries recently; we would be willing to instruct the manufacturers to proceed with immediate delivery if you could guarantee protection of the materials until proper time for installation; also, provided that these materials may be included in our estimate prior to their installation;" and on National Gypsum Company's letter of March 21, wherein it is stated: "Replying to your letter of March 11, with regard to your purchase order

No. 011004, dated November 7, we are indeed sorry to learn that you have been embarrassed in not being able to furnish prompt delivery for the job; it is true that the order has been in our possession since November; however, from time to time we brought this situation to the attention of our Mr. Mullins and also discussed it personally with Mr. Taylor during our telephone conversation on February 25th; at that time, the writer pointed out to Mr. Taylor that the order was still in our possession; however, was informed that the job was not ready for the material and we would be advised at a later date; in the meantime, the plant where this material. is manufactured has had quite a run with orders, now being booked approximately six weeks in advance; under the circumstances, we do not feel any responsibility in the event there should be any back charges against you in connection with the job. There is, however, a ray of hope in the situation as we understand you have endeavored to substitute our econacoustic; we are assuming that your efforts were successful as we have just received a request for credit approval from our Mobile plant which we immediately granted; this is covered by your purchase order No. 41217. Are we therefore correct in assuming that your order No. 011004 dated November 7 is to be cancelled?" and on the following testimony of Richard M. Glazier, assistant manager of the order department of National Gypsum Company: "We have shipped them [Armor Insulating Company] on previous occasions on orders that had been approved by the credit department. . . There were five or six during 1940 and the first month or so of 1941;" and on the testimony of F. M. Taylor of Armor Insulating Company, who testified: "You ask me if I was familiar with the fact that during the fall and winter of 1940 and 1941 the credit situation of Armor Insulating Company and Seaboard Supply Company was an issue with National Gypsum Company; I believe I would remember it had been an issue, and I don't recall that at all—I don't remember it—when a telephone conversation took place between our office and Mr. Felmut of the Buffalo headquarters office of the National Gypsum Company. I seem to faintly remember the call but it is very hazy. I can't answer your question as to whether that call had relationship to the credit situation of our companies—I don't recall it clearly, sir;" and on the testimony of D. N. Scott, who testified that he had no authority

to accept orders in behalf of National Gypsum Company, but testified that he was a sales correspondent; that his district covered the territory in which Armor Insulating Company was located, and that he handled this district alone; "We had new men coming and going, and sometimes we had an assistant who handled some of the details; as to the nature of their correspondence with customers, we would handle any inquiry and production—product information—information on orders, when they would be shipped, the manner in which they would be shipped—we handled correspondence on complaints, either defective material or shortages of cars; any difficulties that came up in the course of a sales transaction would be channeled through our desk," and on the testimony of G. W. Handy, sales manager of National Gypsum Company, who testified: "In November, 1940, Mr. Scott held the position of sales correspondent in the general sales department; his duties were to answer questions and inquiries from salesmen and customers and to expedite orders, to correlate sales and production, and to carry on general correspondence; this would include the acknowledgment of orders in my absence; I think he was to acknowledge orders and receipts of orders in the office, but not necessarily to accept orders for the company; I don't know whether he ever accepted orders for the company or not, or that he ever accepted any orders during my absence; he might have or he might not have; I think we received a letter dated November 8, 1940, written to our company by Armor, in which the purchase order in question was enclosed; D. N. Scott, who answered this letter, is not in our department, but in the general sales department; this order of November 8 could have been referred to the general sales department rather than my department, because I spend two-thirds of my time traveling. . . At that time the sales department acknowledged receipt of orders because I was the only man in my department—maybe I did have an assistant at that time."

However, the letters and testimony pointed out and relied on by the plaintiff in error comprise only a portion of the evidence contained in the record, and it will be necessary hereinafter to set forth the evidence more fully and to deal with it as a whole in determining the question now presented for determination.

The defendant in error, National Gypsum Company, contends that the order of November 7, 1940, for travacoustic tile was never

approved and accepted, and that no binding contract in this respect was ever made between the parties. We are of the opinion that the defendant in error is correct in its contentions. The placing of the order by Armor Insulating Company and the acknowledgment of the receipt thereof by National Gypsum Company did not constitute a valid contract. It was ruled in *Evans* v. *Atlanta Paper Co.*, 21 *Ga. App.* 114, 117 (93 S. E. 1023), as follows: "The mere acknowledgment of the receipt of an order, even though coupled with the assurance that the same should receive prompt attention, is not sufficient to show acceptance of the offer. The reason for this ruling is ably given in the case of Manier *v.* Appling, 112 Ala. 663 (20 So. 978), where the Supreme Court of Alabama held that 'acceptance by a wholesale merchant of an order for the purchase of goods is not shown by evidence that the merchant wrote to the buyer, acknowledging receipt of the order, and stating that it should have prompt attention.' To the same effect see also Courtney Shoe Co. *v.* Curd, 142 Ky. 219 (134 S. W. 146, 38 L. R. A. (N. S.) 903) ; Van Keuren *v.* Boomer, 143 App. Div. 785 (128 N. Y. Supp. 306); National Cash Register Co. *v.* McCann, 80 Misc. 165 (140 N. Y. Supp. 916). In Cheboygan Paper Co. *v.* Swigart Paper Co., 140 Ill. App. 314, it was held that an acknowledgment of the receipt of an order, saying that the same had gone forward to the mill for their attention and would be filled as quickly as the orders now placed with the mill were out of the way, was not such an unconditional acceptance as to constitute a completed contract."

For a contract to result from correspondence, the offer and acceptance contained therein must be clear and unequivocal. It was held in *Robinson* v. *Weller,* 81 *Ga.* 704 (8 S. E. 447) : "While a contract can be made by correspondence through the mails or by telegrams, the offer of a seller must be accepted by the purchaser unequivocally, unconditionally, and without variance of any sort. There must be a mutual assent of the parties, and they must assent to the same thing in the same sense." And in *Harris* v. *Amoskeag Lumber Co.,* 97 *Ga.* 465 (3) (25 S. E. 519), it was said: "A complete and binding contract may be made by means of an epistolary correspondence, but this result is not accomplished until there has been a definite offer by one of the parties to the corre-

spondence, and an unequivocal acceptance of it by the other, without condition or variance of any kind. The parties must 'mutually assent to the same thing in the same sense.'" The record in the present case fails to show an unconditional acceptance by National Gypsum Company of Armor Insulating Company's order of November 7, 1940, for the tile.

David N. Scott testified that he was employed during November, 1940, by National Gypsum Company as a sales correspondent, dealing with salesmen, dealers, and contractors, and that his district covered the territory in which Armor Insulating Company was located. The nature of his correspondence with customers was handling inquiries, production information, information on orders, when they would be shipped, the manner of shipping, and correspondence with respect to complaints as to defective material or shortage of cars; that he wrote the letter dated November 12, 1940, to Armor Insulating Company and did not recall any further correspondence. He further testified: "After finishing the order I probably referred it to the credit department which would have been the normal procedure. . . The only connection I had with the Armor transaction was to receive and check the order and send them the letter acknowledgment of their order. . . I had no authority to either refuse or accept an order."

Albert Felmut testified in substance that he was assistant credit manager of National Gypsum Company; that the company received an order from Armor Insulating Company about November 12, 1940; that it reached the credit department about the same date; that he was familiar with the credit condition of Armor Insulating Company and Seaboard Supply Company, a subsidiary corporation of Armor Insulating Company, and that Armor Insulating Company guaranteed the credit of Seaboard Supply Company; that in November, 1940, they had a past-due account running back ninety days or more in the sum of $1300, and for that reason he refused to approve the order received on November 7, 1940, for acoustical material in the sum of $1900; that he personally had a telephone conversation with one of the officials of Armor Insulating Company, discussed the condition of the account, and reminded him that the credit approval was still being held at that time. "The order was never released from the credit department; we advised Armor Insulating Company that when payment for the past-

due account was received, the order in question would be released as far as credit was concerned; until an order is approved by the credit department nothing can be done on it by way of sending it to the mill for fabrication; the first step taken with any order is submission to the credit department for approval; at the time Armor asked for immediate delivery the order was still unacceptable because the past-due account had not been paid. . . Besides the correspondence with Seaboard Supply Company, we notified Mr. Taylor, an official of both Seaboard Supply Company and Armor Insulating Company by a telephone conversation on February 25th [1940] that we were not filling or accepting their order of November 7th [1940]; on February 25th our salesman telephoned me from Mr. Taylor's office and stated he had been discussing the past-due account with Mr. Taylor and let me talk to him; we [he and Taylor] discussed the past-due account, and I called his attention to the fact that we had not given credit approval for the order because of non-payment of the account; he did not appear particularly interested or concerned about the fact that we were withholding the order; he remarked, 'Well, we have not been requested to make shipment on that order yet; I will advise you later when that order will be needed.' . . Armor Insulating Company was aware of the fact as early as our first written communication with Seaboard Supply Company that my department refused to extend credit approval of this order; I think that Armor was aware that until an order received credit approval, it was of no effect; this was evidenced by the fact that its communication in March was addressed to the credit department rather than the order department." He testified that he personally wrote the letters dated December 3, and December 21, 1940, heretofore referred to, addressed to Seaboard Supply Company.

. George W. Handy testified that he was sales manager of acoustic materials for National Gypsum Company in 1940 and 1941; that in November, 1940, when the order from Armor Insulating Company came in, it was an account being watched, and the company was considered a poor credit risk; that without credit approval he would be out of order to start fabrication of the special material known as travacoustic; that he advised Armor Insulating Company during 1940 his company could not make this particular product in thirty days after receipt of order or after acceptance of

offer. He further testified that on March 7, 1941, when Armor Insulating Company requested immediate delivery, the Portsmouth plant had accepted, among others, a priority order during February, 1941, for this product, five times as large as Armor's, for the Curtis-Wright plant at Buffalo, N. Y., and had Armor's order been approved, it would have been impossible to fabricate it and make delivery for at least thirty or forty days; that he did not promise or tell Armor Insulating Company that the order would be accepted or that they would get the material.

R. M. Glazier, manager of the order department of National Gypsum Company, testified: "I am thoroughly familiar with the regular procedure of the company in receiving, acknowledging, and accepting orders. . . When an order is received directly at our plant from a customer or salesman it is checked for credit approval: They [the plants] are furnished reports from our credit department from which they are able to release certain types of orders and up to certain amounts; if it does not appear on that list, then they must contact the credit department in Buffalo before they can do anything further with the order, and as soon as credit approval is secured a form is made up, which we call a billing form." (Here the witness identified a billing form which was introduced in evidence, and which Taylor testified he recognized and was familiar with, and which stated among other things, "Acceptance of orders: Orders and sales contracts, including prices quoted, are not binding on the National Gypsum Company, irrespective of whether shipment has been made, until and unless approved and accepted by the home office of the company at Buffalo, N. Y. All agreements, quotations, contracts, and deliveries are contingent upon delays in manufacture . . delays in transportation, an oversold condition, acts or regulations of any governmental agencies, war conditions . . beyond the reasonable control of the National Gypsum Company.") "I checked our sales and found that we had sold Armor [Insulating] Company, and [had] made shipments to them on five or six occasions during 1940 and 1941; those shipments would have been approved by the credit department before being made; . . during November, 1940, orders received in the mail went directly from the mail room to the credit department, and then when released by the credit department, or approved by the credit department, they were sent

back or returned to the order department and transmitted to the plant from which shipment was to be made."

It appears from the record that Seaboard Supply Company was a subsidiary of Armor Insulating Company. The two companies occupied the same office at 800 Forrest Street, N. W., Atlanta, Georgia, and had substantially the same officers. F. M. Taylor was secretary of Armor Insulating Company and president of Seaboard Supply Company and kept the records for both companies, and usually wrote the purchase orders. Blackman Dunn was vice-president of both companies. Armor Insulating Company had guaranteed the accounts of Seaboard Supply Company, and the latter was in arrears with its accounts with National Gypsum Company. That company, after receipt of the order of November 7, 1940, for the travacoustic tile, and the acknowledgment of the receipt thereof on November 12, 1940, wrote Seaboard Supply Company on December 3, 1940, as follows: "The balance due [after crediting its account by a check for $820.19, leaving a balance due from August through October 10 of $1468.45] on the August 13 car is $796.14. On the basis that shipment was to be handled on the 60-90-120-day plan, $1062.78, representing the first two-thirds of this car, was due on November 13. Against this we have received $948.03, leaving a balance of $114.75, which is past due according to the agreement made. By December 13th the entire balance of $796.14 will be due. You have not submitted any plan for the handling of the August-September account. The August account is now outstanding over ninety days, which you will agree is considerably in excess of our regular terms. We would like to have you handle your account on a sixty-day basis, and consequently the September account in the amount of $289.20 is also due. . . However, the total amount of your account is approximately $1500, and we feel that some satisfactory plan for payment should be worked out so that the account will not be subject to questioning by our auditors because of a past-due condition when we close our books on December 31. If there is any payment plan that you have in mind for the handling of your account, we would appreciate your submitting it to us for our consideration. We are currently holding an order for travacoustic for Armor Insulating Company to be used on the Artley Company job in Yukon, Florida. Before we can give credit approval to this

order [the November 7, 1940-order], we request that you forward us a check in payment of the August-September account as well as the remaining balance of August 13 car of insulation. This order amounts to approximately $1900, and we are wondering in what manner you intend making payment. On shipments this large we like to have an understanding with the dealer prior to release, so that we will know when we can expect complete payment. As soon as you forward us your check for $1332.01, as well as your plans for payment of the travacoustic order for Armor Insulating Company, we will be in a position to give the order immediate credit approval. We are looking forward to receiving your check covering the balance of the August 31 car as well as the August-September balances with word from you indicating the manner in which the Armor Insulating Company's order will be handled within the next few days. This will put us in a position to give immediate consideration to the Armor Insulating Company order. . . The Armor Insulating Company order amounting to $1900 will increase the total owing by the combined companies to well over $3000, which is considerably more credit than we wish to extend. As soon as we have the reduction in the Seaboard account as requested in the letter as well as information as to how the Armor $1900-order is to be handled, we will be in a position to consider release of the material. If Seaboard Supply Company is unwilling to make a favorable reduction of their account, we will be unable to ship to Armor Insulating Company." And on December 21, 1940, National Gypsum Company, in a letter to Seaboard Supply Company, after referring to a balance due of $796.14, and in reply to Seaboard Supply Company's letter of December 18, 1940, in which it was apparently suggested by Seaboard Supply Company that payments on one of its orders and Armor's orders would be made as fast as Seaboard Supply Company and Armor Insulating Company received payments from the jobs where the materials were to be used, wrote as follows: "It is not our custom to make shipment of material on the basis that it is to be paid for as the material is to be sold. We gave you 120 days to take care of the shipment, expecting that the entire amount would be paid in that time regardless of whether the material had moved or not. . . You will appreciate that your account represents a substantial amount in our books, and we are very anxious to have

it reduced. On the basis that payment 60-90-120 days from date of invoice, the initial car of insulation was due as follows: October 12, $591.39; November 11, $591.39; December 11, $591.39. Against the above we have received on account payments totaling $948.03, leaving a balance as of December 11 of $796.14. . . In regard to the Armor Insulating Company order we can not give credit approval to this shipment until the August 13 car of insulation and the September account are taken care of. You state that payment for the Armor insulating order will be handled as promptly as payments are received from that job; however, as outlined above we can not give credit approval on such a basis. We would like to have you write us indicating the manner in which you wish to handle payment of this shipment so that we can take it into consideration at the time the order comes up for credit approval."

On February 25, 1941, Albert Felmut of National Gypsum Company had a long-distance telephone conversation with F. M. Taylor of Seaboard Supply Company and Armor Insulating Company, in which he pointed out that the order of November 7, 1940, was still being held pending credit approval. On March 7, 1941, National Gypsum Company was advised by a letter from F. M. Taylor of Armor Insulating Company that the job was ready for the material covered by the order then under consideration, and the letter stated: "This is a little sooner than I anticipated when talking with you over long-distance last month, and I wonder if you are in a position to immediately release the order which you have on file for shipment to this job?"

On March 11, 1941, Armor Insulating Company demanded shipment of the material involved and for the first time advised National Gypsum Company that its contract with Artley Company on the Florida job contained a penalty provision and that the date for the completion of the job was April 1, 1941. According to the evidence, had credit approval of the order of November 7, 1940, been granted, this was not sufficient notice to National Gypsum Company to enable it to furnish the material in question. It appears from a red-pencil notation made by T. T. Tucker, president of Armor Insulating Company, on a letter from Artley Company to Armor Insulating Company dated March 22, 1941, that Armor Insulating Company had not heard of the completion date for the Artley Company job until that time.

The record fails to show an unconditional acceptance by National Gypsum Company of the order of November 7, 1940. There was no mutual meeting of the minds of the parties as to the terms and conditions of payment and the date for the delivery of the material involved. Consequently, there was no valid and completed contract between them. Under the evidence, it can not be said that Armor Insulating Company had been led to believe that its order had been unconditionally accepted by National Gypsum Company.

Therefore it follows that the court did not err in holding that the evidence failed to sustain the counterclaim of the defendant, and in directing a verdict for the plaintiff.

*Judgment affirmed. Parker, J., concurs. Felton, J., concurs in the judgment.*