## 39894. STATE HIGHWAY DEPARTMENT v. WRIGHT CONTRACTING COMPANY.

DECIDED APRIL 11, 1963—REHEARING DENIED MAY 13, 1963.

Eugene Cook, Attorney General, Carter Goode, E. J. Summerour, Assistant Attorneys General, for plaintiff in error.

Swift, Pease, Davidson & Chapman, W. G. Scranton, Jr., Tom B. Slade, contra.

FELTON, Chief Judge. ■ It must first be determined whether or not the items claimed by the plaintiff in count 3 constituted "extra work" as defined by § 1.29 of the State Standard Specifications, in accordance with which the contractor agreed to perform the work under the contract. "Extra work" is defined as "work or material, the performance or furnishing of which is found necessary for proper completion of the improvement and which in principle is an obligation of the contractor, but which is not covered by any item in the bid schedule in the

Proposal and for which no means of payment, direct or indirect, has been provided in the Contract, and which is an obligation for which special remuneration, by an 'extra' price or by other consideration, in any case to be duly negotiated, or by 'Force Account', shall be paid to the Contractor."

The plaintiff in error argues that the work done does not come within the definition of "extra work" above for the reason that the defendant in error failed to comply with the requirements of § 2.06 of the Standard Specifications, which provide that "The bidder is required to examine carefully the site of, and the proposal, plans, Specifications and Contract Form for the work contemplated and it will be assumed that he has judged for and satisfied himself as to the conditions to be encountered, as to the character, quality and quantities of work to be performed and the materials to be furnished, and as to the requirements of these Specifications, Special Provisions and Contract. No adjustments on compensations will be allowed for losses caused by failure to comply with the above requirements." Construing this provision most strongly against the defendant, who formulated it, we do not believe that the conditions encountered on the project were such that the contractor should have been expected to have anticipated in the exercise of reasonable diligence. The fact that the contract makes provisions for extra work necessitated by unforeseen conditions is evidence enough that not every condition is expected to be anticipated. The additional fact that the defendant executed a supplemental agreement compensating the plaintiff for materials used in the extra work estops it from asserting the defense that the plaintiff was barred from a recovery for failure to comply with this section. Paragraph 24 (d) of the plaintiff's amended petition alleges that there is no dispute between the parties over the fact that the work was "extra work" and that the only issue with reference to this claim is the amount due the plaintiff for this work. The defendant's general demurrer to this allegation admits its truth for purposes of pleading.

Having decided that under the allegations of the petition the work was "extra work," we must now determine whether there was either such a compliance by the plaintiff with the provisions

of the contract concerning compensation for extra work, or a waiver of these provisions by the defendant. Section 4.04 of the Standard Specifications provides in part that *"before any 'Extra Work' is started* a 'Supplemental Agreement' shall be signed by both contracting parties *or* an Extra Work Order from the Engineer to do the work on a 'Force Account' basis given the Contractor." (Emphasis supplied). Section 9.05 provides in part that "[i]n all cases such agreements shall be made *before the work is started . . .*" (emphasis supplied) and that "[t]he Engineer shall secure from the Contractor a written agreement for the work to be done and basis of payment (lump sum, force account or unit price) and submit the same together with his estimate of amount and cost of work to the Department for authorization to perform such Extra Work." In § 9.05 (D), it is further provided that "[n]o extra work on a Force Account Basis will be paid for unless unit prices for labor, materials, and equipment rentals have been agreed upon *in writing before such work is started.* In no case shall the unit prices paid to the Contractor exceed the amount of the quoted unit price for each item *stipulated in the Force Account Agreement."* (Emphasis supplied). From the above provisions, it seems clear that a prerequisite to the contractor's recovery upon a force account is a written agreement with the Department, stipulating unit prices, made before the work is started. No such agreement is alleged by the plaintiff to have been executed and, construing the petition most strongly against the pleader, we must assume that there was none.

Was there a waiver by the defendant of this provision requiring a prior written agreement? Section 4.03 provides in part that "[s]upplemental agreements . . . increasing or decreasing the quantity of work by more than twenty [20] percent as provided above, are independent of and *do not waive any of the provisions regarding extra work as stipulated in Article 4.04."* (Emphasis supplied). This would seem to indicate that the supplemental agreement did not waive the necessity for the supplemental agreement or the extra work order to have been executed *before* the work was started.

As described above, the defendant's actions evidenced its ac-

knowledgment that the work was "extra work" and hence would require additional compensation. With this knowledge it directed the performance of the extra work, without taking the action required of it by § 9.05 of the Standard Specifications, to wit: "The *Engineer shall secure from the Contractor* a written agreement for the work to be done and basis of payment . . ." The plaintiff notified it both before commencing the work and before executing the supplemental agreement that it expected to submit a claim for the cost in excess of the contract amount plus a reasonable profit. The supplemental agreement covered merely the cost of materials, which was obviously only a part of the total extra cost incurred. The supplemental agreement contains no provision indicating that it is payment in full for all the compensation due the contractor. An additional indication of the defendant's waiver of this contractual requirement is the allegation of paragraph 24 (a) of the petition as amended (which the general demurrer admits, for pleading purposes, to be true) that *"Following* the completion of said extra work, *as was its custom and practice at that time,* defendant submitted to petitioner, with reference to said extra work, a Supplemental Agreement. . ." (Emphasis supplied). This alleged practice, plus the fact that the defendant directed the plaintiff to do the work without first securing a written agreement as provided in the contract, led the plaintiff to assume that the provision had been waived, and it would be manifestly unjust for the defendant to insist upon the strict terms of the contract after having so misled the plaintiff and received the fruits of its labors. "Where the owner, without claiming that the work is covered by the contract, orally orders extra work, as such, with notice that the contractor regards the work as extra and expects additional compensation therefor, the contractor can recover for the work notwithstanding a stipulation of the contract requiring a written order therefor." 66 ALR 649, 674; Id., p. 701; *Southern Life Ins. Co. v. Citizens Bank of Nashville,* 91 Ga. App. 534, 538 (86 SE2d 370); *Kaufman v. Young,* 32 Ga. App. 135 (6) (122 SE 822); Keahon Bros., Inc. v. Blank, 292 NYS 257, 259 et seq. (161 Misc. 874); *McDaniel v. Mallary Bros. Machinery Co.,* 6 Ga. App. 848 (1) (66 SE 146).

■ The next issue to be resolved is whether or not the supplemental agreement and the payment made thereunder was such an accord and satisfaction of all the debts owing to the plaintiff as to bar any additional claim by the plaintiff for amounts not covered under the agreement. The defendant's sending of the unsigned agreement form to the plaintiff constituted an offer to pay the plaintiff the amount stated thereon, i. e., merely for the cost of materials. The plaintiff's execution of the form, accompanied by a letter of protest stating his intention to file another claim for the balance later, was a counter offer, since it added new terms and conditions to the original offer. "The acceptance of an offer, not in the terms in which it was made, but upon certain terms and conditions contained in the acceptance, amounts to a counter offer by the offeree; and *when the counter offer is accepted* by the person making the first offer, there is such a meeting of the minds between the parties as will constitute a contract." *Estes Lumber Co. v. Palmyra Yellow Pine Co.*, 29 Ga. App. 15 (1) (113 SE 821) (Emphasis supplied). See also cases cited in the dissent in *Massachusetts Bonding &c. Co. v. Bins Equip. Co.*, 100 Ga. App. 847, 852 (112 SE2d 626). "Where one makes an offer with certain terms or conditions, and accepts an acceptance which is not responsive to the proposal, he is bound by the contract thus made, and cannot fall back on his proposal in case of subsequent disagreement. This acceptance has made a new agreement on the terms of the new offer. The acceptance of the modified proposal must be in accordance with its terms, although the offerer need not make a formal acceptance of the new proposal by the offeree, but such acceptance may be inferred from conduct, as where the parties enter on the execution of the contract as though the new term were included, but it cannot be inferred from mere silence. *If the answer to an offer by letter proposes modifications, the party making the original offer must communicate his acceptance of the modifications if he proposes to hold the other as on a counter offer accepted by him.*" 17 CJS 385, Contracts, § 44. (Emphasis supplied).

The defendant executed the purported contract with the knowledge that the plaintiff intended to claim additional com-

pensation; the plaintiff had so notified it in writing on two previous occasions—once before commencing the work and again when executing the purported agreement. The defendant's execution of the paper under these circumstances, without having notified the plaintiff as to whether or not it was accepting the contract as modified by the plaintiff's counter offer (i. e., as a partial payment only) did not amount to an acceptance of either the original offer or the counter offer, and since there was lacking the mutuality of assent to the identical terms necessary for a contract, no valid contract was made. "While a contract can be made by correspondence through the mails or by telegrams, the offer of a seller must be accepted by the purchaser unequivocally, unconditionally, and without variance of any sort. There must be a mutual assent of the parties, and they must assent to the same thing in the same sense." *Robinson v. Weller*, 81 Ga. 704 (8 SE 447); *Monk v. McDaniel*, 116 Ga. 108 (3) (42 SE 360); *Anderson, Clayton & Co. v. Mangham*, 32 Ga. App. 152, 156 (123 SE 159); *Armor Insulation Co. v. National Gypsum Co.*, 71 Ga. App. 672 (31 SE2d 880); *B. L. Montague Co., Inc. v. Somers*, 94 Ga. App. 860 (96 SE2d 629). This is not altered by the fact that the defendant paid, and the plaintiff accepted, the money under the purported agreement. Since the plaintiff had not heard to the contrary, it might have assumed that the defendant had accepted the plaintiff's condition by executing the paper. Unless the payment was by check, with some notation to the effect that it represented payment in full for all work done, the plaintiff was justified in regarding the sum as partial payment.

■ Another ground urged by the plaintiff in error for sustaining its general demurrer is the failure of the plaintiff below to specifically allege compliance with § 7.17 of the Standard Specifications, which provides as follows: "Both parties to the contract agree that as a condition precedent to the filing of an action in any court involving the amount or rate of payment or settlement for work performed by the Contractor under these Specifications and Contract, and as a condition precedent to the liability of the Board for any amount other than contained in the estimates approved by the Engineer, any question at issue

involving the amount or rate of settlement or liability of the State for an amount other than as shown by the estimates approved by the Engineer, shall be referred to a board of arbitration for decisions and award. Said board of arbitration shall consist of three persons, one to be chosen by the State Highway Board, one by the Contractor, and the third by these two. The board of arbitration shall make such rules as it shall determine equitable to govern itself in the conduct of the investigation and determination of the award. In determining the award, the majority of the board of arbitration shall govern, and the parties to the Contract shall be bound by the findings of said board of arbitration, certified copies of which findings and award shall be filed with the State Highway Board and Contractor. The board of arbitration shall fix the amount of the cost of the proceedings, including a fair and reasonable compensation to the arbitration board members and shall determine how the total cost shall be borne. The authority of the board of arbitration shall not extend to the interpretation of the Plans and Specifications, or the determination of the qualities of the materials or workmanship furnished by the Contractor. The board of arbitration shall have no authority to set aside or to modify the terms or requirements of the Contract. *The board of arbitration shall have authority only to pass upon questions involving compensation to the Contractor for work actually performed but not allowed by the Engineer* and make recommendations to the State Highway Board in accordance with their findings." (Emphasis supplied).

Assuming that this point is reached by a general demurrer, we do not think this contention is meritorious. If the italicized portion of this section above conflicts with the provisions therein giving the board of arbitration power to determine the Highway Board's liability "for any amount other than contained in the estimates approved by the Engineer," the contract must be construed against the defendant, who wrote it. Under the express terms of the contract, only compensation for "work performed and disallowed by the engineer" is to be subjected to arbitration. This work was ordered, performed, and, as discussed previously, allowed by the engineer by his having pre-

pared the revised design and having waived the provisions as to written agreements before the work was done. Accordingly, as we construe the wording of this section of the contract, it was not intended to apply to a situation such as this where work was both performed and allowed, and where the question is in the first instance not one of fact but of law: i. e., the legal liability of the parties, and, if so, whether there has been an accord and satisfaction, and so forth. These questions must first be determined before the amount of liability, a question of fact, can be determined. The terms of the contract do not give the arbitration board authority to decide questions of law, from which it follows that this plaintiff did not need to submit to arbitration before filing this action. See *State Hwy. Dept. v. MacDougald Construction Co.*, 189 Ga. 490 (2) (6 SE2d 570).

For all of the above reasons, the court did not err in overruling the general demurrer to count 3 as amended.

■ The plaintiff's claim for damages in count 4 is based upon the defendant's alleged breach of contract in not anticipating the subsurface conditions in the preparation of the contract, plans and specifications and in delaying the reaching of a decision and making necessary additional plans and drawings to correct the conditions. Reference to the following portions of the contract and the Standard Specifications is sufficient to show that this claim was without merit and therefore subject to the general demurrer: Contract, Par. 4: "The decision of said State Highway Engineer upon any question connected with the execution of this agreement or any failure or delay in the prosecution of the work by the said contractor shall be final and conclusive"; § 8.07, Stand. Spec.: "The Engineer shall have the authority to suspend the work wholly or in part, for such period as he may deem it necessary, due to unsuitable weather, or such other conditions as are considered unfavorable for the suitable prosecution of the work. . . *No additional compensation shall be paid the contractor because of such suspension.* . . The work shall be resumed when conditions are favorable or when corrective measures satisfactory to the Engineer have been applied, when and as ordered by the Engineer in writing" (Emphasis supplied); § 9.03, Stand. Spec.: "The Contractor shall receive

and accept the compensation provided for in the Contract as full payment for . . . all expenses incurred by, or in consequence of the suspension or discontinuance of said prosecution of the Work as herein specified. . ."

Concerning the defendant's failure to anticipate such subsurface conditions, it is sufficient to say that provision was made for the revision of plans to correct any such conditions and for additional compensation for such "extra work" thereby necessitated. In the absence of such provisions in the contract, it would be a jury question as to whether the defendant's three weeks' delay was a breach of the contract, but in the face of the clear provisions, the claim must be held to be subject to the general demurrer.

The court erred in its judgment overruling the general demurrer to count 4 for the reasons discussed above, but did not err in overruling the general demurrer to count 3 for the reasons discussed in Division 1 of this opinion.

*Judgment affirmed in part; reversed in part. Eberhardt and Russell, JJ., concur.*