John L. KING, Trustee in Reorganization of Gilcor Enterprises, Inc.

v.

Warren E. GILBERT.

Civ. A. No. C 75–2054 A.

United States District Court, N. D. Georgia, Atlanta Division.

March 22, 1977.

On Motion to Alter or Amend Judgment July 7, 1977.

480

Frank B. Wilensky, Charles E. Lamkin, Atlanta, Ga., for plaintiff.

Floyd E. Siefferman, Jr., Atlanta, Ga., for defendant.

## ORDER

JAMES C. HILL, Circuit Judge, Sitting by Designation.

This action is presently before the court on the cross-motions of the parties for summary judgment. Upon careful consideration of the record and briefs, the court is persuaded that there is no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P.

The facts appear as follows: the defendant, Warren E. Gilbert, was one of the founders of Gilcor Enterprises, Inc. (Gilcor). Begun as a sole proprietorship in the 1950's, the business prospered and ultimately evolved into a marketable corporation. Thus, on August 21, 1968, an agreement and plan of reorganization was entered into among Gilcor, the stockholders of Gilcor (Warren E. Gilbert, Richard P. Cornell, Dorothy G. Moore and William C. Gilbert), and RIC Group, Inc. (RIC), a Delaware corporation, for the exchange of all of the issued and outstanding stock of Gilcor for 150,000 shares of RIC common stock. Paragraph 13 of the agreement and plan of reorganization provided:

*Indemnity with Respect to Taxes.* The Stockholders agree to indemnify and hold Gilcor harmless against any and all loss, liability and expense, excluding attorneys' fees, resulting from or arising out of taxes levied or assessed by any governmental authority, federal, state or local, with respect to the income or operations of Gilcor for all periods prior to October 1, 1968, which were not reserved against in its balance sheet at September 30, 1968. The Stockholders are hereby granted full power and authority to take all action with respect to the proceedings relating to such taxes, including the right to settle, compromise and dispose of such proceedings in the name of Gilcor, and the Stockholders will be entitled to the benefit of any refunds and credits of any such taxes for such periods.

The prosperity which Gilcor had enjoyed prior to August, 1968, did not continue under the management of RIC. Consequently, on February 23, 1972, a voluntary petition for Chapter 10 reorganization was filed in the United States District Court for the Northern District of Texas on behalf of Gilcor, now a wholly owned subsidiary of RIC. On September 11, 1972, the defendant entered into an agreement of purchase and sale for all of the capital stock and assets of Gilcor with the plaintiff, John L. King, the duly appointed trustee of Gilcor in the Chapter 10 proceedings. Paragraph 5 of the Agreement for Purchase and Sale provided:

*Taxes*: Trustee has presently pending Net Operating Loss Tax Carry Back Refund claim prior to 1971 calendar year and the parties hereto agree that any recovery therefrom of any nature whatsoever is the exclusive asset and property of the Trustee. Gilbert represents and warrants to the Trustee that the aforedescribed tax claims and any proceeds and payments made relative thereto shall be the property of the Trustee and that he will personally, or cause Gilcor, to execute any and all documents that, in the opinion of Trustee or Trustee's counsel, may be necessary to effectuate the same, including prosecution thereof, and will make the books and records of Gilcor needed in the prosecution of said claim available to the Trustee. All expenses of such prosecution shall, however, be borne by Trustee. In the event that proceeds of said tax claim are paid to Gilcor, Gilbert will cause the Stockholders and Board of Directors to pay same to the Trustee. All loss carry forward, however, shall remain with Gilcor as an asset thereof. It is understood that the purchaser has the option to file 1971 taxes, and it is understood that all 1971 and 72 losses and rights, if any, are the sole possession of the purchaser. Nineteen Seventy-One and 72 taxes must be filed separate from a RIC consolidation.

On December 6, 1972, the United States District Court for the Northern District of Texas confirmed the plan of reorganization. The confirmation order provided "[t]hat, upon closing of the agreement with Warren E. Gilbert upon which the Plan is based, the reorganized Debtor shall be free of the jurisdiction of the Court." However, the confirmation order went on to provide "[t]hat this Court reserves the full right and jurisdiction to make at any time anf [sic] from time to time such Orders in aid of the consummation of such Plan as the Court may deem proper."

On May 10, 1973, Gilcor received a tax refund of $41,986.14. Concerning this refund, the Internal Revenue Service stated:

The reduction in tax in the period ended September 30, 1968 was due to a carry-back loss from the year ended September 30, 1970. The total tax decrease was made in the amount of $33,456. A refund check of $41,986.14 was issued on April 30, 1973  .  .  .

After receiving advice of counsel, the defendant invested the income tax refund for the benefit of the four 1968 stockholders of Gilcor. Gilcor was dissolved as a corporation on December 20, 1974.

On June 17, 1975, the bankruptcy court in the United States District Court for the Northern District of Texas authorized the plaintiff as trustee of Gilcor "to investigate the receipt of a certain income tax loss

carry-back refund allegedly received by Gilcor Enterprises and Warren E. Gilbert, and to undertake such plenary proceedings in any Court of competent jurisdiction as may be necessary to assert and recover any and all causes of action the estate may have arising from said transaction and to assure that all other obligations of Gilcor Enterprises, Inc. and Warren E. Gilbert under said plan have been consummated." On October 22, 1975, this diversity action was instituted for the recovery of the tax refund.

■ The issue in this case is who is entitled to the tax refund for the period ended September 30, 1968, which was due to a carryback loss from the year ended September 30, 1970. The plaintiff urges that he is entitled to the refund as Trustee pursuant to the 1972 purchase and sale agreement. The defendant contends that the tax refund is due to be distributed to the four stockholders of Gilcor as of 1968 pursuant to the terms of the 1968 agreement and plan of reorganization. The court is persuaded that resolution of this issue requires an interpretation of the language quoted from these respective agreements. A reading of the relatively unambiguous language in these agreements persuades the court that the defendant is correct and that the tax refund is the property of the four shareholders of Gilcor in 1968.

The plaintiff places too heavy reliance upon the language of the 1972 agreement of purchase. The plaintiff correctly asserts that part of the consideration for the 1972 exchange between himself as Trustee and the defendant as purchaser of Gilcor was the pending tax refund claim for years prior to 1971. Thus, the Trustee bargained to keep for himself a contingent claim for the refunds prior to 1971. Likewise, the defendant as the purchaser of Gilcor bargained in this same agreement to receive the benefit of any loss carry-forward and to retain the losses and rights for the years 1971 and 1972. That is, the Trustee as seller of Gilcor bargained *not* to relinquish ownership of all of the assets of Gilcor. The Trustee retained ownership of and title to a refund claim for the calendar years prior to 1971 as "the exclusive asset and property of the Trustee." The court apprehends that this type of arrangement is not atypical in the business world.

The flaw in the plaintiff's analysis is his refusal to recognize the identical pattern used in 1968 when the four stockholders, in effect, sold Gilcor to RIC. Part of the consideration for the 1968 bargain was the allocation of contingent tax claims. As the Trustee in 1972 sought to retain the benefit of a refund claim, so in 1968 the stockholders bargained to sell less than all of the assets of Gilcor. In this 1968 transaction, the Stockholders were persuaded that they had to indemnify the purchaser for any tax claims originating prior to October 1, 1968. In exchange or as consideration therefor, the stockholders retained unto themselves "the benefit of any refunds and credits of any such taxes for such periods." That is, the stockholders bargained for the right to retain an asset of Gilcor for themselves—title to the refund of any taxes paid prior to October 1, 1968. The stockholders chose not to sell all that they owned in Gilcor and RIC purchased less than everything. This arrangement should not surprise the plaintiff as he opted to structure the sale of Gilcor in 1972 in much the same way.

The happenstance that the purchaser of Gilcor in 1972 was one of the original stockholders in 1968 muddies the waters but does not alter the result. The four stockholders of Gilcor in 1968 retained a benefit unto themselves which the defendant in 1972 could not unilaterally give up. The four stockholders own the tax refund claim prior to October 1, 1968, and it was never an asset of Gilcor as a wholly owned subsidiary of RIC. Thus, Gilcor's alleged attempt to retain for itself in 1972 something to which it lost title in 1968 is unavailing. Gilcor retained under the 1968 agreement the benefit of any refunds and credits for periods subsequent to September 30, 1968. Thus, the Trustee of Gilcor in the 1972 purchase agreement was within his rights to retain the exclusive right to refunds for years prior to 1971. However, the Trustee's

rights are limited by the ownership rights of Gilcor. Gilcor had earlier bargained away its rights to tax refunds for periods prior to October 1, 1968. The language of the 1972 purchase agreement may be favorably compared to a quit-claim deed. In this case the Trustee's property is bounded on one side by years prior to 1971 and on the opposite by periods subsequent to September 30, 1968. Thus, the Trustee has no valid claim to the funds at issue.

Wherefore, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the motion of the defendant for summary judgment is hereby GRANTED.

## ON MOTION TO ALTER OR AMEND JUDGMENT

On March 22, 1977, the Court granted defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The case is presently before the Court on plaintiff's motion to alter or amend the judgment. After careful consideration the Court is persuaded that the motion should be denied.

The relevant facts are outlined in the Court's previous order and will not be repeated here. Plaintiff contends that the tax refund claim was not "retained by" or "assigned to" the original shareholders by the 1968 agreement. Further, plaintiff contends that the tax refund claim could not have been assigned in light of the federal "Anti-Assignment Statute," 31 U.S.C.A. § 203, and that the refund claim was "property" which could not be assigned under Georgia law. Finally, plaintiff urges that defendant conveyed at least his interest in the tax refund claim pursuant to the 1972 agreement, or, alternatively, defendant breached the warranty contained in the 1972 agreement.

Under Georgia law the word "assignment" is used to signify the act by which one transfers to another, or causes to vest in another, the entire right, interest, or property which he has in realty or personalty. *Johnson v. Brewer*, 134 Ga. 828, 68 S.E. 590 (1910). No formal language is necessary and if the language used in a transaction shows the intention of the owner of a right to assign it so that it becomes the property of another, then a legal assignment exists. *Hanes v. Crown Camera Sales, Inc.*, 468 F.2d 1318 (5th Cir. 1972). In the construction of a contract, the contract as a whole must be looked into in arriving at the construction of any part. Ga.Code Ann. § 20–704(4); *State Highway Dept. v. Wright Construction Co.*, 107 Ga.App. 758, 131 S.E.2d 808 (1963). The construction and interpretation of written contracts is a matter for the Court, and no jury question is raised unless after the application of all applicable rules of construction an ambiguity remains. *Farm Supply Company of Albany v. Cook*, 116 Ga.App. 814, 159 S.E.2d 128 (1967).

The Court remains persuaded that "Gilcor had earlier bargained away its rights to tax refunds for periods prior to October 1, 1968." Plaintiff correctly notes that the Court referred to the stockholders having "retained" the tax refund claim unto themselves. While the 1968 transaction was a sale of stock and the reference to "retaining" as opposed to "assigning" back may have been inappropriate, the interpretation of the 1968 agreement remains the same. Thus, when Gilcor, the stockholders of Gilcor, and RIC agreed that "the Stockholders will be entitled to the benefit of any refunds and credits of any such taxes for such period," the meaning is clear. As between these three parties, the stockholders were given the right to the subject tax refund. In effect, Gilcor and/or RIC relinquished or "assigned" "any refunds and credits of any such taxes for such periods."

Plaintiff's contentions that defendant assigned *his* interests in the tax refund claim and that defendant breached the warranty contained in the 1972 agreement, are also unavailing. The Court remains persuaded that under paragraph 5 of the 1972 agreement for purchase and sale "the Trustee bargained to keep for himself a contingent claim for the refunds prior to 1971. . . That is, the Trustee as seller of Gilcor bargained *not* to relinquish ownership of all of the assets of Gilcor." In short, plaintiff

retained the rights of Gilcor in the tax refund claim and read in conjunction with the entire 1972 agreement the Court is of the opinion that the language cannot be construed to assign to plaintiff rights which defendant obtained under the 1968 agreement.

The Court can sympathize with the position taken by plaintiff. The Court is persuaded that the application of the terms of the agreements in this case have produced an odd result which the parties probably never contemplated. However, the Court is convinced that the application of the terms of the agreements controls the outcome of this case. The application of written agreements, however, do not alter with the facts and circumstances surrounding each argument. The clear language of a written agreement controls notwithstanding that in a particular instance a particular result was unintended.

Thus, in the case *sub judice* the peculiar circumstance is that the tax refund resulted from net operating loss carry backs. In all likelihood at the time the parties were negotiating the 1968 agreement no one consciously considered the prospect of operating losses. The purchaser obviously considered Gilcor a good investment with profits in its future. The sellers would not desire to dampen negotiations by raising the prospect of future losses. So, in all probability the circumstances existent in this case were not contemplated by the parties.

However, the clear language of the 1968 agreement covers the situation. If a pure mathematical error had resulted in the overpayment of taxes prior to October 1, 1968, the Court is convinced that no law suit would ever have been filed. Upon application of the unambiguous language of the 1968 agreement the stockholders would be entitled to the refund. The genesis of this law suit is the nature of the refund. However, the clear language of the 1968 agreement applies equally to circumstances contemplated by the parties as to those uncontemplated but within the terms of the agreement.

The Court has considered the remaining contentions of plaintiff and find them to be without merit. Consequently, plaintiff's motion to alter or amend the judgment is hereby denied.

IT IS SO ORDERED.