## Courtney Shoe Co. v. E. W. Curd & Son.

(Decided February 14, 1911.)

### Appeal from Barren Circuit Court.

A drummer sent in to his house an order which he had taken. The house, on receiving the order, wrote the customer a card saying that the order was at hand and would receive prompt and careful attention, also thanking the customer for it, and hoping to merit future favors. On the same day the house rejected the order and sent it to the drummer to return to the customer, on the ground that he had no authority to make the sale. The drummer returned the letter to the house, asking the house to send it to the customer. This the house did eight days after the order was received. The customer insisted that his order had been accepted. Held, that there was no acceptance of the order, and that the house was not liable in damages for refusing to fill it.

W. R. GARDNER and GARDNER & JONES for appellant.

V. H. BAIRD and BAIRD, RICHARDSON & SUMMERS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

The Courtney Shoe Company is a wholesale house doing business in St. Louis, Missouri; E. W. Curd & Son are merchants doing business at Cave City, Kentucky. On August 22, 1909, Curd & Son gave W. B. Yater, a traveling salesman of the Courtney Shoe Company, two orders, one for stock shoes amounting to $49.15, the other for sample shoes amounting to $1,772.35, both to be shipped as soon as it could. The order though made on the 22d was dated the 21st, as the 22d was Sunday. It was mailed to the house by the drummer, reaching the house on August 23d; the house then wrote Curd & Son the following card:

"St. Louis, Mo., August 23, 1909. Dear Sirs:—Your order of August 21, '09, to our Mr. Yater is at hand and will receive our prompt and careful attention. Thanking you for same, and hoping to merit your future favors, we are, yours truly, The Courtney Shoe Co."

On August 31, the Courtney Shoe Company wrote Curd & Son a letter in which they rejected the order for sample shoes amounting to $1,772.35, telling him that the drummer had no authority to sell the samples, and that they could not accept the order. The stock shoes to the amount of $49.15 were shipped, and Curd & Son refusing to pay for them, the Courtney Shoe Company brought this suit to recover the price. Curd & Son pleaded as a counterclaim the failure of the plaintiffs to fill the order for the sample shoes, alleging that the order was accepted by the house, and that it had thereafter refused to fill the order to their damage in the sum of $1,083.20. Issue was joined on the counterclaim, and on a trial of the case before a jury, there was a verdict for the defendants on the counter claim, fixing the damages at $250. The court entered judgment on the verdict, and the plaintiff appeals.

The proof for the plaintiff showed that when the drummer's order reached the house, the card above quoted was mailed to the customer to acknowledge the receipt of the order, according to a custom of the house; that the order was then referred to the officer who passed on orders; that he on the same day as soon as the order

reached him, marked it rejected, and mailed it to the drummer, directing him to return it to the customer. The drummer on receiving the letter, returned it to the house, asking the house to send it to the customer, and immediately thereupon, the letter of August 31 was written and mailed   The proof for the plaintiff was also to the effect that such cards are in common use among wholesale merchants, and are mailed simply to let the customer know that his order has been received from the drummer, before they are passed on by the house.   On the other hand, the proof for the defendant was to the effect that such cards were often the only notice that the customer received, before he received notice that the goods were shipped, and that in this case the defendant received no other notice than the card, as to the order for stock shoes, $49.15.   On this proof the court told the jury that they should find for the defendant unless the card quoted was intended as an  acceptance of the  order, when it was sent by the plaintiff, thus submitting to the jury the effect of the card.   The rule is that the construction of a writing is for the court.   It is only when parol evidence is admissible to explain a writing that the matter may be submitted to the jury.   In 1 Greenleaf on Evidence, Sec. 278, the rule is thus stated:

"The terms of every written instrument are to be understood in their plain, ordinary, and popular sense, unless they have generally, in respect to the subject-matter, as by the known usage of trade, or the like acquired a peculiar sense, distinct from the popular sense of the same words; or unless the context evidently points out that, in the particular instance, and in order to effectuate the immediate intention of the parties, it should be understood in some other and peculiar sense."

There were no technical words used in the card.   There is no proof of any usage of trade by which the words used have acquired a peculiar sense distinct from their popular sense.   The words are, therefore, to be understood in their plain ordinary and popular sense, and what they mean is a question for the court.   In Mannier v. Appling, 112 Ala., 663, the Supreme Court of Alabama had before it the question whether a card acknowledging the receipt of an order sent in by a drummer and stating that "the same shall receive prompt attention," was an acceptance of the order.   Holding that it was not, the court said:

"The response, and the only response, the defendants made was an acknowledgement by postal card of the receipt of the order or proposal, accompanied by the expression, 'the same shall have prompt attention;' and it is this response it is insisted, constituted an acceptance of the proposal, converting the proposal and acceptance into a contract of sale. Unless these words, 'the same shall have prompt attention' are deflected from their natural, ordinary meaning, they can not be construed into an acceptance of the proposal of the plaintiff, converting the two into a concluded or completed contract. The operative words are attention and prompt. The latter when read in connection with the terms of the proposal that the shoes should be shipped on the succeeding 15th of June, signifies, and was intended to signify, no more than that attention would be given in time to meet this term. If given within that time, it was as speedy as the nature or necessities of the transaction required. Promise to give the proposal attention, was not a promise of acceptance; it was not an assent to it. It was no more than a courteous promise to give it consideration, and this we do not doubt is the sense in which it is generally, if not universally, employed in transactions of this character."

In Rees v. Warwick, 2 B. & Ald., 113, the person who was notified that a bill of exchange had been drawn upon him, replied that it should "have attention," it was held that this did not as a matter of law import an acceptance of the bill. In Cheboygan Paper Co. v. Swigert Paper Co., 140 Ill. App., 314, an order had been sent in by a drummer for certain goods. The house wrote a letter acknowledging the receipt of the order, and saying, "same has gone forward to the mill for their attention." The court said:

"This language can not, in the opinion of a majority of the court, be held acceptance of or an assent to plaintiff's order, nor more than a statement that the writer had sent the order to the defendant for its attention."

In Jordon v. Patterson, 67 Conn., 473, the plaintiff sent the defendant fourteen separate orders for goods. The defendants replied acknowledging and describing the orders received expressing their thanks therefor, and subsequently delivered a portion of the goods but declined to deliver the remainder. It was held as a matter of law, that the order was accepted but the ruling is based

not so much on the language of the letter as the conduct of the parties. To same effect see Bauman v. McManus, 75 Kans., 106, where upon the receipt of an order sent in by a drummer, the house sent a card like that before us, and afterward both parties by their conduct treated the order as accepted. The opinion is rested not so much on the card as on the subsequent letters written by the parties. In the case at bar, if the plaintiff's letter of August 23d rejecting the order had been mailed to defendants directly, and not to the drummer, it is hard to believe that this controversy would have arisen. It is true the card uses the words, "our prompt and careful attention," but the addition of the word "careful" adds nothing to the sense, nor do the concluding words of the card thanking Curd & Son for the order and hoping to merit future favors. These are simply the usual expressions of merchants on receiving an order, and throw little light on the question of its acceptance or rejection. The promise to give the order attention was simply a promise to do what the plaintiff did. They did give it attention and rejected it. It is insisted that they did not reject it in a reasonable time; that eight days was an unreasonable delay; but the delay is explained by the fact that the letter was sent first to the drummer to forward to the customer, according to a custom of the house, and that he returned it to the house for it to write the customer, and this caused the delay which ensued. The order of the drummer was subject to the approval of the house. (Chas. Brown Grocery Co. v. Beckitt, 57 S. W., 458; John Matthews Apparatus Co. v. Renz & Henry, 61 S. W., 10; Seven Hills Chautauqua v. Chase Bros., 81 S. W., 238; L. A. Becker & Co. v. Alvey, 86 S. W., 974). The drummer had no authority to sell the samples. His action did not bind the house. It was promptly repudiated when it reached the house, and the defendants should not recover damages against the plaintiff for the refusal to deliver these goods upon the order taken by the drummer at a large discount below the regular selling price.

The question when such an order is accepted, is not without importance. Until it is accepted it may be countermanded by the buyer. When it is once accepted and the buyer's right to countermand is at an end, the seller can not revoke the acceptance without the consent of the buyer. It is generally held that if the seller does not

formally accept the order it is subject to countermand, until it is accepted by the shipment of the goods, but that it can not be countermanded after the goods are shipped. (North Western Thresher Co. v. Kubicek, 82 Neb., 485; Main v. Tracy, 86 Ark., 27; Ziemeh v. Parish, 74 Kans., 542; McCormick H. M. Co. v. Markert, 107 Iowa, 340; Star Union Line v. Boston Medical Inst., 126 Ill. App., 106.) In determining what is an acceptance where there is nothing in the conduct of the parties to show an acceptance in fact of the order, we think it is a safe and sound rule that the words of the writing shall be taken in their plain, ordinary and popular sense, and that they should not be strained to express a meaning they do not naturally convey.

We, therefore, conclude that there was no acceptance of the order for the sample shoes, and that the court should have instructed the jury peremptorily to find for the plaintiff the amount of their claim sued for.

Judgment reversed and cause remanded for further proceedings consistent herewith.