ALLY CAT, LLC (d/b/a Kidzlife Pediatrics), et al, Appellants,

v.

Hon A.C. McKay CHAUVIN (Judge, Jefferson Circuit Court, Division 8), et al, Appellees.

No. 2008–SC–000377–MR.

Supreme Court of Kentucky.

Jan. 22, 2009.

Robert A. Donald III, Louisville, KY, Counsel for Appellants.

A.C. McKay Chauvin, Judge, Jefferson Circuit Court, Division 8, Louisville, KY, pro se.

William A. Miller, Jr., Hummel, Coan, Miller & Sage, Louisville, KY, Counsel for NC Legacy, LLC Real Parties In Interest Legacy Homes, Real Parties In Interest, Mark Isaacs, Real Parties In Interest.

Jason C. Vaughn, Jessica Dawn Smith, Vaughn & Associates, PLLC, Louisville, KY, Counsel for Co–Owners of North Commons, Legacy Senior Residences, Real Parties in Interest.

Opinion of the Court by Justice VENTERS.

Appellants, Ally Cat, LLC, a/k/a Kid-zLife Pediatrics, and Dr. Stephanie Rus-

sell, appeal as a matter of right from an April 2008 order of the Court of Appeals denying them intermediate relief against an opinion and order by Appellee, Judge A.C. McKay Chauvin of the Jefferson Circuit Court. Appellee's order mandated that Appellants enter into an arbitration proceeding with the Real Parties in Interest, N.C. Legacy, LLC ("NC Legacy"), Legacy Homes, Mark Isaacs, and Council of Co–Owners of Norton Commons Legacy Seniors Residences ("the Council"). For the reasons set forth herein, we now reverse the Court of Appeals.

On December 5, 2006, Ally Cat, LLC, purchased a condominium unit ("the Unit") from NC Legacy for use as a medical clinic. NC Legacy is owned by Isaacs. Dr. Russell, as the sole member of Ally Cat, LLC, signed all of the paperwork, including the deed. Neither the deed nor the sales contract preceding it contained a clause requiring arbitration of any disputes relating to the Unit. As a condition of purchasing the Unit, Appellants became members of the Council. The Council is an association comprised of all of the condominium owners in the Unit's building. Isaacs is the president of the Council.

The following day, December 6, 2006, Dr. Russell received a document entitled "Home Owners Limited Warranty" ("HOLW"). By her signature, she acknowledged receipt of the document on December 6. Her signature indicates no representative capacity as an agent for her company, Ally Cat, LLC, the purchaser of the Unit. The HOLW is signed by no other party and names "Legacy Dev Corp" as the "builder" and hence, the warrantor. None of the parties with whom Dr. Russell contracted are identified in the HOLW. The HOLW, on its face, provides a limited warranty for the Unit but also mandates that any disputes between parties be arbitrated. The arbitration clause states:

If parties are unable to mutually resolve any controversy or claim through the conciliation procedure, then any controversy or claim arising out of or relating to this Agreement, the Limited Warranty described in this Agreement, or any breach of this Agreement or the Limited Warranty shall be settled by binding arbitration submitted to a professional arbitration service under its rules relating to the construction industry and the Kentucky Arbitration Act. The arbitrator's decision shall be final and legally binding and judgment on the award rendered by the arbitrator(s) maybe entered in any court having jurisdiction thereof. Each party shall be responsible for its share of the arbitration fees in accordance with the applicable rules of the arbitration service selected. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award or fails to comply with the arbitrator's award, the other party is entitled to recover its costs, including a reasonable attorney fee, for having to compel arbitration or defend or enforce the award.

In March 2007, Dr. Russell opened a pediatrics office in the Unit. In April 2007, Dr. Russell noticed that the roof of the Unit leaked causing water to run down the walls and pool on the floor in certain areas. Dr. Russell notified NC Legacy of the leaks. Further leaking occurred in July and August 2007. NC Legacy and the Council failed to solve the problem to Dr. Russell's satisfaction.

Dr. Russell then hired several experts to inspect the Unit. One expert noted several building defects which caused the leaks. The other expert found that due to the leaking, mold was growing in certain areas of the Unit. The Metro Louisville Health Department evaluated the Unit as well and

advised Dr. Russell to take remedial steps to keep mold growth to a minimum.

Appellants filed a declaratory judgment action and a claim for damages against the Real Parties in Interest on October 2, 2007, in the Jefferson Circuit Court. Appellants' petition sought relief for fraud, concealment, misrepresentation, tortious misconduct, negligence, breach of contract, and professional negligence. The petition made no reference to the HOLW. The Real Parties in Interest filed a motion to compel arbitration based on the HOLW. On January 25, 2008, Appellee entered an opinion and order which mandated that the parties arbitrate their dispute.

Appellants appealed to the Court of Appeals for intermediate relief from Appellee's order. The Court of Appeals denied relief finding that the mold contamination in the Unit was insufficient to constitute a "great injustice and irreparable injury." Additionally, the Court of Appeals found that "[i]nterminable delay and economic disadvantage do not constitute 'irreparable injury' within the context of the extraordinary relief this court will grant under Const. sec 110." See *Shelby County Bd. of Education v. Wright,* 390 S.W.2d 654, 656 (Ky.1965).

Appellants now appeal to this Court. Appellants argue that the Court of Appeals should have granted intermediate relief to them because: 1) the trial court had no subject matter jurisdiction to order the parties to arbitration because the HOLW's arbitration provision fails to satisfy the requirements of KRS 417.200; 2) the trial court had no subject matter jurisdiction to order the parties to arbitration because the HOLW's arbitration provision fails to satisfy the requirements of KRS 417.050; and 3) intermediate relief was warranted even if the trial court had subject matter jurisdiction. We reverse.

## I. The HOLW's Arbitration Provision Fails to Satisfy the Provisions of KRS 417.200

■ An order compelling arbitration under a valid arbitration agreement is, ordinarily, not appealable. KRS 417.060; *American General Home Equity v. Kestel,* 253 S.W.3d 543 (Ky.2008); *Fayette County Farm Bureau Federation v. Martin,* 758 S.W.2d 713 (Ky.App.1988). Appellants argue, however, that the trial court, as a matter of law, lacked the subject matter jurisdiction to compel arbitration because the HOLW's arbitration clause does not satisfy the requirements of KRS 417.200. Lack of jurisdiction affords a basis for review by way of a Writ of Prohibition. See *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky.2004) (a writ of prohibition may be granted "upon a showing that . . . the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court.") Appellants assert that the arbitration clause fails to satisfy KRS 417.200 because the clause does not state that the arbitration is to occur in Kentucky. Thus, Appellants argue that they should receive a writ of prohibition against Appellee. KRS 417.200 is part of the Kentucky Arbitration Act which was adopted from the Uniform Arbitration Act. KRS 417.200, the jurisdiction statute, states:

The term "court" means any court of competent jurisdiction of this state. The making of an agreement described in KRS 417.050 providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this chapter and to enter judgment on an award thereafter.

KRS 417.200 has been interpreted to require that an arbitration clause include language stating that the arbitration is to be held in Kentucky before a Kentucky

court can enforce an arbitrator's award. In *Tru Green Corp. v. Sampson,* 802 S.W.2d 951, 952 (Ky.App.1991), our Court of Appeals concluded that the plain meaning of KRS 417.200 is that the agreement for arbitration, "wherever made, must provide for the *arbitration itself to* be in the Commonwealth in order to confer subject matter jurisdiction on a Kentucky court." The Court of Appeals reiterated that rule in *Artrip v. Samons Construction, Inc.,* 54 S.W.3d 169, 171 (Ky.App.2001) holding:

> The essential rule of this jurisdiction applies in the case before us because Kentucky courts are only empowered to confirm arbitration awards when the parties' agreement provides "for the *arbitration itself to* be in the Commonwealth."

After reviewing authority from other states that adopted the Uniform Arbitration Act, the Court of Appeals in *Artrip* held:

> Although common sense would seem to dictate that crossing the boundary from Kentucky into Ohio should not vitiate Kentucky jurisdiction, we believe that *Tru Green* requires a recitation in the original agreement preceding any geographic movement occurring after the fact, a recitation that is a condition precedent to the existence of jurisdiction.

*Id.* at 173.

It is argued by the Real Parties in Interest, that *Artrip* and *Tru Green* are not applicable in this case because both involved efforts to enforce in a Kentucky court an arbitration agreement containing no geographic restriction, and where the arbitration itself had already occurred outside the state. To the extent that in this instance, the issue arises out of the effort to resist arbitration, rather than a proceeding to enforce an arbitration award, it is one of first impression.

 Obviously, the phrase in KRS 417.200, "providing for arbitration in this state" means something. We are not free to ignore the words of the statute, as if they have no meaning. Rules of statutory construction to ascertain the intent of the legislature in its use of that language prohibit us from disregarding it altogether. Only when an injustice or ridiculous result would occur, may we ignore the plain meaning of the statute. *Revenue Cabinet v. O'Daniel* 153 S.W.3d 815 (Ky.2005).

The Real Parties in Interest's argument offers no alternative meaning for the phrase under review here. They argue that any agreement to arbitrate satisfies KRS 417.200 so long as it does not compel arbitration to occur outside this state. The Real Parties in Interest's interpretation of KRS 417.200 carries the same meaning with and without the phrase, and thus it is an interpretation which renders the phrase meaningless.

 We hold that the Court of the Appeals in *Tru Green* and *Artrip* got it right. Subject matter jurisdiction to enforce an agreement to arbitrate is conferred upon a Kentucky court only if the agreement provides for arbitration in this state. Thus, an agreement to arbitrate which fails to include the required provision for arbitration within this state is unenforceable in Kentucky courts. *Tru Green* and *Artrip* held that arbitration awards arising from such agreements are unenforceable in Kentucky courts when the arbitration occurred outside the state. We hold now that the parties need not suffer the expense and delay of the arbitration hearing, only to find that the award is unenforceable. When the issue arises prior to the arbitration hearing, as it has in this case, and the agreement upon which arbitration is sought fails to comply with the literal provisions of KRS 417.200, the courts of Kentucky are, pursuant to KRS

417.200, without jurisdiction to enforce the agreement to arbitrate.

We have not heretofore, and do not now, address the situation in which a similarly defective arbitration clause leads to an action to enforce an arbitration award, where the arbitration hearing did in fact occur within Kentucky. Other considerations may therein arise which are not before us now.

## II. The HOLW Fails to Meet the Requirements of KRS 417.050

■■■ The Appellant directs this Court's attention to other issues which raise a substantial question of law as to whether the HOLW itself even constitutes a "written contract to submit to arbitration any controversy thereafter arising between the parties." KRS 417.050. We note that on its face, the HOLW identifies the warrantor as "Legacy Dev Corp." Legacy Dev Corp is not a party to this action, and was not a party to the transaction which took place between the Appellant and the Real Parties in Interest. The HOLW is not signed by any person as a representative of Legacy Dev Corp., nor is it signed by any of the Real Parties in Interest or their agents. It therefore does not appear to be an agreement "between the parties." We note also that Ally Cat, LLC, did not sign the HOLW. It was signed by Dr. Russell as "Stephanie M. Russell" with no indication that she signed as a representative of any corporate entity. Moreover, the printed form of the HOLW above the line for the "purchaser's signature" reads: "This acknowledges the receipt of the 'Home Owner's Limited Warranty'." By its own terms, the HOLW limits the effect of Dr. Russell's signature to a mere acknowledgment of receipt, and not an assent to the terms thereof. Assent to be bound by the terms of an agreement must be expressed, and simply acknowledging the receipt of the document does not constitute assent to be bound. *See Courtney Shoe Company v. E.W. Curd and Son,* 142 Ky. 219, 134 S.W. 146 (1911) and *Henry Clay Fire Ins. v. Denker's Executrix,* 218 Ky. 68, 290 S.W. 1047 (1927). We are unable to construe the HOLW as an extension of an amendment to the Sales and Purchase Contract because that document states explicitly that it "constitutes the entire Contract between the parties and shall not be amended unless in writing and duly signed by both parties." The warranty was something extra given to Dr. Russell after the transaction, not a part of the agreement to which she bound her company.

The HOLW expressly states, in the second sentence thereof, that it is a limited warranty extended to the owner "while occupying the house as a residence during the coverage period." The unit sold to Ally Cat, LLC, was not a house occupied as residence. Thus, by its very terms, it cannot be reasonably construed as applicable to the transaction between Ally Cat, LLC and the Real Parties in Interest for a medical clinic.

For the foregoing reasons we conclude as a matter of law that the HOLW does not constitute "the making of an agreement described in KRS 417.050", a predicate for jurisdiction under KRS 417.200.

## III. The Writ of Prohibition was Improperly Denied

Having determined pursuant to KRS 417.200, the Jefferson Circuit Court lacked jurisdiction to order the parties to submit to arbitration as described in the HOLW, we turn to Appellants' argument that the writ of prohibition should have been granted by the Court of Appeals.

■■■ A writ of prohibition is an extraordinary remedy, available only in two instances: 1) when a "lower court is pro-

ceeding or is about to proceed outside its jurisdiction and there is no remedy through an application to an intermediate court; or 2) the lower court is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise, and great injustice or irreparable injury will result." *Hoskins,* 150 S.W.3d at 10. We do not address the second ground upon which a writ may be issued. The Court of Appeals, as the court in which the action originated, found no great and irreparable injury. We need not disturb that finding. However, we do hold by the analysis set forth above, that because KRS 417.200 limits the subject matter jurisdiction of the Circuit Court to arbitration agreements which satisfy the requirements of KRS 417.050, and which provide for arbitration to occur in this state, the Jefferson Circuit Court was proceeding outside its jurisdiction when it ordered the parties to submit to arbitration, and that there is no adequate remedy available to Appellant through application to an intermediate court.

We do not, by this opinion, signify any retreat from our recognition of the prevalent public policy favoring enforcement of agreements to arbitrate. See *Louisville Peterbilt Inc. v. Cox,* 132 S.W.3d 850, 854 (Ky.2004) (stating that Kentucky and national policy favors arbitration agreements). However, that policy is extended to contracts for arbitration which satisfy the requirement of KRS 417.050. The document involved here is not such a contract.

## IV. Conclusion

Appellant raised other arguments to challenge the enforceability of the HOLW. Because we find it unenforceable for the reasons set forth above, we decline to address those remaining arguments.

Accordingly, we reverse the order of the Court of Appeals entered April 24, 2008, and remand this matter to that Court with directions to grant the Writ of Prohibition prohibiting the Appellee from enforcing the order requiring the parties to submit to arbitration, and lifting the stay imposed upon the adjudication of the case.

All sitting. All concur.