RENDERED:  FEBRUARY 27, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1515-MR


PAUL A. KRALLMAN; ANDREW
KRALLMAN; JAMES E. KRALLMAN;
ROBERT A. KRALLMAN;
AND MITER MASONRY CONTRACTORS,
INC.                                                                          APPELLANTS


                          APPEAL FROM CAMPBELL CIRCUIT COURT
v.                 HONORABLE DANIEL J. ZALLA, JUDGE
                          CASE NO. 24-CI-00619


NIKKI KRALLMAN, INDIVIDUALLY
AND AS THE MOTHER OF J.K., A MINOR;
J.K., A MINOR; ELLIE KRALLMAN;
TOMMY KRALLMAN; AND THE
GERALD KRALLMAN TRUST                                          APPELLEES


OPINION
AFFIRMING AND REMANDING

** ** ** ** **

BEFORE:  EASTON, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE:  Paul A. Krallman, James E. Krallman, Andrew Krallman, Robert A. Krallman, and Miter Masonry Contractors, Inc. appeal from the Campbell Circuit Court's order denying their motion to compel arbitration.  We agree with the circuit court that arbitration cannot be compelled under the Kentucky Uniform Arbitration Act ("KUAA")[1] because the arbitration provision at issue does not meet the jurisdictional requirements of KRS 417.200 as interpreted in *Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451 (Ky. 2009).  The arbitration provision may be enforceable, however, under the Federal Arbitration Act ("FAA")[2] upon a finding that the underlying contracts involve transactions in interstate commerce.  We therefore affirm the trial court's decision as to the application, or lack thereof, of the KUAA but vacate the trial court's order and remand for further proceedings to determine whether the FAA applies to the case *sub judice*.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a family business, Miter Masonry Contractors, Inc. ("Miter Masonry"), that was incorporated in Ohio in 1982.  The president of Miter Masonry, Thomas Krallman, eventually became its sole shareholder, and the company employed his five sons, Paul, James, Andrew, Robert, and Gerald.  In

---

[1] Kentucky Revised Statutes (KRS) 417.045 *et seq.*

[2] 9 United States Code (U.S.C.) §§ 1 *et seq.*

2012, Thomas transferred an identical amount of Class A common stock in Miter Masonry to each of his sons, with the result that the five brothers owned all the company's Class A stock.

On December 31, 2012, Thomas and his sons entered into a Buy-Sell Agreement which was intended to keep the Miter Masonry stock in the family. To that end, the Buy-Sell Agreement provided that if any Krallman brother died, his 20 percent interest of the Class A stock could be sold only to a direct descendant or another existing sibling shareholder.

> If a shareholder dies or becomes disabled . . . such Shareholder (or the personal representative of a deceased or disabled Shareholder) shall offer for sale, all the Class A Common Shares of the Company then owned by the Shareholder, to those other Shareholders who are direct descendants of the selling Shareholder but not to a spouse, or if shares are held by a descendant and that Shareholder has no descendants who qualify, then to those other Shareholders who are siblings.

The Agreement contained the following provision regarding the purchase price of Class A stock:

> The purchase price, except as modified in paragraph 4(b) below, of each share to be purchased pursuant to this Agreement, is hereby stipulated to be book value, subject to the adjustments provided herein, determined by the Company's accountant, as of the date of the Shareholder's death, disability, dissolution or notice of the Shareholder's desire to sell the Shareholder's shares. . . .

Paragraph 4(b) provided:

The Company and all the Shareholders may agree as to the purchase price for shares to be purchased pursuant to this Agreement because of death or total disability and such stipulated price shall be noted in Schedule B attached to this Agreement. . . .

The Agreement also contained an arbitration provision, which states:

**Arbitration**. Any dispute, including a claimed breach of the terms hereof, arising out of or in connection with this Agreement shall be resolved by arbitration conducted by the American Arbitration Association in accordance with its Rules then in existence. The arbitrators shall not contravene or vary in any respect any of the terms or provisions of this Agreement. The award of the arbitrators shall be final and binding upon the parties thereon, their heirs, administrators, executors, successors and assigns and judgment upon such award may be entered in any court having jurisdiction thereof.

The Buy-Sell Agreement provided that it "shall be interpreted in accordance with the laws of the State of Ohio." The Agreement was signed by Thomas, as President, Secretary, and Shareholder, and by his five sons, as Shareholders.

Over ten years later, in late June 2023, Gerald was diagnosed with terminal cancer. He and his wife, Nikki Krallman, had been engaged in lengthy and contentious divorce proceedings. *See Krallman v. Estate of Krallman by and Through Moore*, No. 2024-CA-0065-MR, 2025 WL 223608, at *1 (Ky. App. Jan. 17, 2025). On Gerald's motion, the dissolution proceedings were bifurcated, and

the decree of dissolution was entered on July 21, 2023. *Id.* All issues regarding the marital property were reserved for later. *Id.*[3]

Also on July 21, 2023, Gerald executed the Gerald T. Krallman Trust Agreement forming a trust which named his three children, J.K., Thomas, and Ellie, as beneficiaries, and designated his father, Thomas, as the trustee. On the same date, the Krallman family entered into a Transfer Agreement which permitted Gerald to transfer his Miter Masonry shares into the Trust and allowed Miter Masonry to purchase Gerald's shares from the Trust upon his death for $500,000. This amount was equivalent to the proceeds from a life insurance policy that Miter Masonry owned on each shareholder.

Paragraph 5 of the Transfer Agreement stated:

Pursuant to Section 4(b) of the Buy-Sell Agreement, the Company and all Shareholders stipulate that the purchase price for the Class A shares to be purchased pursuant to the Buy-Sell Agreement because of the death or total disability of a Shareholder shall be $500,000.00 which shall be paid by proceeds from the life insurance policy owned by the Company on each Shareholder. The Closing shall occur upon the receipt by the Company of the death benefits under the life insurance policy.

The appellants claim that this provision of the Agreement was a mutual mistake, and the parties actually intended Gerald's shares to be sold for book value, as envisioned by the Buy-Sell Agreement.

---

[3] The final order regarding the property issues was entered on December 13, 2023.

Gerald passed away on September 7, 2023. His Trust conveyed his shares to Miter Masonry for their book value of $83,000, not for the $500,000 specified in the Transfer Agreement. Miter Masonry was thus able to purchase Gerald's shares and keep over $417,000 in insurance proceeds. Gerald's children thereafter initiated and/or intervened in multiple proceedings in Campbell Circuit Court and Kenton District and Circuit Courts to register the Trust, remove the Trustee, and safeguard the Trust assets. Thomas, Gerald's father, was removed as the executor of Gerald's estate.

On June 27, 2024, Paul, James, Andrew, Robert, and Miter Masonry filed a complaint in Campbell Circuit Court against Nikki; Gerald's children; and the Gerald Krallman Trust, seeking to compel arbitration or, alternatively, for reformation and declaration of rights to enforce the terms of the Buy-Sell Agreement and the Transfer Agreement. In Count I, the plaintiffs sought specific performance of the Arbitration Provision in the Buy-Sell Agreement. In Count II, the plaintiffs sought declaratory judgment and reformation of the Transfer Agreement to reflect what they characterized as the true, intended "book value" of Gerald's shares. The plaintiffs subsequently filed a motion to compel arbitration and sought an order enforcing the Arbitration Provision.

The circuit court denied the motion to compel, on the grounds that the KUAA confers subject matter jurisdiction only when the arbitration agreement

specifically provides for arbitration within Kentucky, which the Buy-Sell

Agreement does not. This appeal followed.

## STANDARD OF REVIEW

Under both the KUAA and the FAA, "a party seeking to compel

arbitration has the initial burden of establishing the existence of a valid agreement

to arbitrate." *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 590 (Ky. 2012)

(citation omitted). "Unless the parties clearly and unmistakably manifest a

contrary intent, that initial showing is addressed to the court, not the arbitrator, . . .

and the existence of the agreement depends on state law rules of contract

formation." *Id.* (citations omitted). "An appellate court reviews the trial court's

application of those rules *de novo*, although the trial court's factual findings, if any,

will be disturbed only if clearly erroneous." *Id.* (citations omitted).

## ANALYSIS

The circuit court held that it lacked jurisdiction to compel arbitration

because the Buy-Sell Agreement failed to designate Kentucky as the site of

arbitration. It based this ruling on the plain language of the KUAA, as interpreted

by the Kentucky Supreme Court in *Ally Cat*, 274 S.W.3d 451.

The relevant provision of the KUAA states as follows:

The term "court" means any court of competent
jurisdiction of this state. The making of an agreement
described in KRS 417.050 **providing for arbitration in
this state** confers jurisdiction on the court to enforce the

-7-

agreement under this chapter and to enter judgment on an award thereunder.

KRS 417.200.

*Ally Cat* explains:

Subject matter jurisdiction to enforce an agreement to arbitrate is conferred upon a Kentucky court only if the agreement provides for arbitration in this state. Thus, an agreement to arbitrate which fails to include the required provision for arbitration within this state is unenforceable in Kentucky courts. . . . We hold now that the parties need not suffer the expense and delay of the arbitration hearing, only to find that the award is unenforceable. When the issue arises prior to the arbitration hearing, . . . and the agreement upon which arbitration is sought fails to comply with the literal provisions of KRS 417.200, the courts of Kentucky are, pursuant to KRS 417.200, without jurisdiction to enforce the agreement to arbitrate.

*Ally Cat*, 274 S.W.3d at 455–56.

The circuit court's opinion is fully in accordance with KRS 417.200 as construed in *Ally Cat*. The arbitration provision in the Buy-Sell Agreement does not designate where the arbitration is to take place. Consequently, it is unenforceable under the KUAA, and we thus agree with the trial court as to its inapplicability in the case at bar.

However, the trial court prematurely concluded the analysis regarding its authority to compel arbitration. It failed to consider the fact that an arbitration

agreement unenforceable under the KUAA is still enforceable in Kentucky if it meets the requirements of the FAA.[4]  The FAA states in pertinent part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]

9 U.S.C. § 2.

"Commerce" for purposes of the FAA is defined as "commerce among the several States[.]"  9 U.S.C. § 1.

A series of Kentucky opinions holds that an agreement that does not designate Kentucky as the arbitral forum is nonetheless enforceable in Kentucky if it *expressly* provides that it is governed by the FAA.  *See Ernst & Young, LLP v. Clark*, 323 S.W.3d 682, 687 (Ky. 2010) (holding the arbitration agreements at issue explicitly required that disputes be governed by the FAA); *Hathaway v. Eckerle*, 336 S.W.3d 83 (Ky. 2011) (finding the arbitration clause was enforceable through the FAA when the language used in a sales contract between a car dealer

---

[4] Although unpublished, two opinions by this Court are notable in their similarity to the case at bar; *Bache v. Sallee*, No. 2021-CA-0396-MR, 2022 WL 982319 (Ky. App. Apr. 1, 2022); and, *Nissan v. Hurt*, No. 2010-CA-001555-MR, 2013 WL 5592372 (Ky. App. Oct. 11, 2013). Unpublished opinions are not binding precedent, but only persuasive authority.

and customer provided that disputes would be settled by arbitration "according to the Federal Arbitration Act" ); and *MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906–07 (Ky. 2013) (holding arbitration could be compelled per the FAA when the agreement specified that "the United States Arbitration Act (Title 9 of the United States Code) shall govern the interpretation, enforcement and proceedings pursuant to the arbitration provisions of this Order."). However, in the case *sub judice*, no specific reference was made to the FAA; but significantly, no such designation is necessary if the underlying contract meets the requirements of the FAA as one involving interstate commerce.

In a case which predates the KUAA, the Kentucky Supreme Court held that the provisions of the FAA "apply to actions brought in the courts of this state [Kentucky] where the purpose of the action is to enforce voluntary arbitration agreements in contracts evidencing transactions in interstate commerce." *Fite & Warmath Const. Co., Inc. v. MYS Corp.*, 559 S.W.2d 729, 734 (Ky. 1977). The enactment of the KUAA in 1984 has not undermined this holding in *Fite*.

In a more recent opinion following the promulgation of the KUAA, *Ping*, 376 S.W.3d 581, the Kentucky Supreme Court addressed whether a wrongful death action brought by the estate of a deceased nursing home resident was subject to arbitration under a provision in the contract of admission to the facility. Concerning the applicability of the FAA, the Court observed:

-10-

The Federal Act applies to arbitration provisions in contracts "evidencing a transaction involving [interstate] commerce," 9 U.S.C. § 2, and almost certainly applies here. Congress's commerce power is interpreted broadly, and "may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003) (citation and internal quotation marks omitted). The Supreme Court has held that health care is one such activity. *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 111 S. Ct. 1842, 114 L. Ed. 2d 366 (1991) (hospital's purchase of out-of-State medicines and acceptance of out-of-State insurance establish interstate commerce).

*Id.* at 589.

The appellees, citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989), argue that provisions of the FAA do not independently empower the Kentucky court to compel arbitration absent subject-matter jurisdiction under state law. Specifically, they state that language in the jurisdictional subsection of the KUAA[5] does not conflict with language in the FAA; therefore, the FAA does not preempt the KUAA. However, *Volt* is easily distinguishable to the case *sub judice*.

---

[5] KRS 417.200 Court – Jurisdiction. "The term 'court' means any court of competent jurisdiction of this state. The making of an agreement described in KRS 417.050 providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this chapter and to enter judgment on an award thereunder."

In *Volt*, the construction contract between the parties contained an agreement to arbitrate. When a dispute arose between the parties,

> Volt made a formal demand for arbitration. Stanford responded by filing an action against Volt in California Superior Court, alleging fraud and breach of contract; in the same action, *Stanford also sought indemnity from two other companies involved in the construction project, with whom it did not have arbitration agreements.* Volt petitioned the Superior Court to compel arbitration of the dispute. Stanford in turn moved to stay arbitration pursuant to Cal. Civ. Proc. Code Ann. § 1281.2(c) (West 1982), which permits a court to stay arbitration pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by it, where "there is a possibility of conflicting rulings on a common issue of law or fact." The Superior Court denied Volt's motion to compel arbitration and stayed the arbitration proceedings pending the outcome of the litigation on the authority of § 1281.2(c). App. 59–60.

*Id.* at 470–71, 109 S. Ct. at 1251–52 (emphasis added) (footnotes omitted). The United States Supreme Court held that a state court rule that allowed the court to enter a temporary stay of arbitration pending the resolution of litigation involving parties who were not subject to the arbitration agreement was not precluded by the FAA. "[B]ecause the Federal Arbitration Act does not provide for scenarios in which some parties are and others are not subject to an arbitration agreement, parties to arbitration agreements may, without running afoul of the FAA, opt for State procedural rules that give the court discretion to stay arbitration pending related litigation." *North Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 105 (Ky.

2010) (citing *Volt*, 489 U.S. 468, 109 S. Ct. 1248). But a state procedural rule which does not conflict with the FAA and does not preclude arbitration differs significantly from a statute like KRS 417.200, which bars a state court from assuming jurisdiction at all. The appellees contend that the FAA does not create independent subject matter jurisdiction and only applies when the state court already has jurisdiction under the KUAA. But our case law, as outlined above, *does* enable a circuit court to compel arbitration when the agreement meets the requirements of the FAA as one involving interstate commerce, even if the arbitration agreement does not comply with KRS 417.200.

In sum, Kentucky courts will enforce arbitration agreements that are subject to the FAA, either through express designation in the agreement, as in *Ernst & Young*, *Hathaway*, and *M & H Trucking*, or when the underlying contract evidences a transaction involving interstate commerce, as in *Ping*, regardless of whether the arbitration agreement complies with KRS 417.200.

As indicated above, the trial court prematurely ended its analysis regarding their ability to compel arbitration by not considering the nature of the parties' transaction and whether it involved interstate commerce thereby triggering the application of the FAA. Therefore, the matter must be remanded for the circuit court to make findings of fact regarding whether the Buy-Sell Agreement and the

Transfer Agreement are contracts "evidencing transactions in interstate commerce." *Fite*, 559 S.W.2d at 734.[6]

The appellants argue that the appellees, who are non-signatories to the contracts, are bound by the arbitration provision and that the scope of the arbitration agreement encompasses all the claims raised in the plaintiffs/appellants' complaint and the cross-claims and counterclaims raised by the appellees. These issues may be addressed by the circuit court, but only insofar as they relate to the validity of the arbitration agreement itself, not to the underlying contracts. *Green v. Frazier*, 655 S.W.3d 340, 345–46 (Ky. 2022) (challenging the validity of the underlying contract is an issue within the purview of the arbitrator). The court's assessment of issues relating to the validity of arbitration agreement is governed by ordinary state law rules of contract formation. *GGNSC Stanford, LLC v. Rowe*, 388 S.W.3d 117, 121 (Ky. App. 2012) (citations omitted); *Ping*, 376 S.W.3d at 590.

---

[6] As a guide to making this determination, we note that the FAA "rests on the authority of Congress to enact substantive rules under the Commerce Clause." *Southland Corp. v. Keating*, 465 U.S. 1, 11, 104 S. Ct. 852, 858, 79 L. Ed. 2d 1 (1984). Under 9 U.S.C. § 2, "the scope of the FAA mirrors Congress's Article I power to regulate interstate commerce." *Brookdale Sr. Living Inc. v. Stacy*, 27 F. Supp. 3d 776, 791 (E.D. Ky. 2014). "Congress's commerce power is interpreted broadly, and may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Ping*, 376 S.W.3d at 589 (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57, 123 S. Ct. 2037, 2040, 156 L. Ed. 2d 46 (2003)).

## CONCLUSION

The circuit court's order denying the motion to compel arbitration under the KUAA is affirmed. However, the case is remanded for the court to first decide if the arbitration provision is valid under state law. If valid, then the court must make findings regarding whether the Buy-Sell Agreement and the Transfer Agreement are contracts evidencing transactions involving interstate commerce under the FAA, which would enable the court to enforce the arbitration provision.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Jeffrey C. Mando
Daniel E. Linneman
Covington, Kentucky

BRIEF FOR APPELLEES J.K. KRALLMAN, A MINOR; TOMMY KRALLMAN; AND ELLIE KRALLMAN:

Marie K. Ante
Florence, Kentucky

NO BRIEF FOR APPELLEES NIKKI KRALLMAN, INDIVIDUALLY AND AS THE MOTHER OF J.K., A MINOR; AND GERALD KRALLMAN TRUST.